20023.

Jean SEGALL, Individually and as Executrix and Trustee under the will of Max Shore et al., Rsepondents, v. Reuben SHORE et al., Appellants.

(215 S. E. (2d) 895)

444

Messrs. *J. D. Todd, Jr., and Carl G. Ferguson,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for Appellants,*

*Messrs. David L. Freeman* and *James C. Parham, Jr.,* of *Wyche, Burgess, Freeman & Parham,* Greenville, *for Respondents,* 

*Messrs. J. D. Todd, Jr.,* and *Carl G. Ferguson,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for Appellants,* in Reply.

May 29, 1975.

*Per Curiam:*

This case is before us on appeal from the order of the Honorable Clarence E. Singletary, presiding judge of the Court of Common Pleas for Greenville County. We are of the opinion that his order properly sets forth and disposes of all of the issues on the appeal to this Court. Let his order, with minor deletions of matters not necessary to disposition of the issues, be printed as the directive of this Court.

## ORDER OF JUDGE SINGLETARY

The plaintiffs in this case are among the beneficiaries under the Will of Max Shore, a resident of Greenville County, South Carolina, who died on September 27, 1971. They are also shareholders in their own right of one or both of the defendant corporations which form a major part of Max Shore's estate. The plaintiff Jean Segall is also a co-Executrix and co-Trustee under the Will and is the Secretary and a Director in both of the defendant corporations.

The primary relief sought in this action has dealt with accountings from the individual defendants who are the remaining co-Executors and co-Trustees under the Will, as well as officers and Directors of the Defendant corporations, and (in the case of Sidney Shore and Reuben Shore) partners who survived Max Shore in the defendant partnership, Carolina Blouse Co.

The defendants Sidney Shore and Reuben Shore are also beneficiaries under the Will of Max Shore. One of the defendants, Morris Root, was the accountant for all of the businesses of Max Shore for a number of years. He is also an Executor and Trustee under the Will of Max Shore and a Director of both defendant corporations.

Plaintiffs seek, among other things, an accounting from the defendants on the ground that the individual defendants, in their various fiduciary capacities, have mismanaged the affairs and assets of the estate, the corporations, and the partnership, and have engaged in manipulation and self-dealing with these fiduciary assets for their own personal benefit.

The principal assets of Max Shore at the time of his death consisted of (1) all of the common stock in MacShore Classics, Inc. (Classics); (2) 25% of the common stock of The Shore Company, Inc. (Shore Company); and (3) a one-third interest in the partnership, Carolina Blouse Company (Carolina Blouse).

The main business of these three entities was the production and sale of ready-to-wear blouses, shirts and similar apparel. The Shore Company was organized to hold two parcels of real estate and plant facilities, one in Woodruff, South Carolina, and the other at Greenville, South Carolina. Substantially, the role of Classics was to purchase raw materials, subcontract the production of goods, make sales and receive the profits. Carolina Blouse was the production entity and was paid for the finished goods by Classics.

During the 1950's and 1960's MacShore Classics, Inc., conducted a manufacturing operation, producing certain types of clothing. While so engaged, this corporation had a sales force, advertising personnel and production units. In the late 1960's MacShore Classics, Inc. suffered severe financial setbacks, and by 1969 had accumulated losses in the approximate amount of $750,000.00. For tax purposes, this constituted a carried loss. Some time during the latter part

of 1969, the defendant Reuben Shore, solicited business from Lady Arrow Division of Cluett Peabody and Company, Inc. (Lady Arrow). When this account was obtained, Reuben Shore was a partner in Carolina Blouse and was also employed by a MacShore sales subsidiary.

At all times pertinent herein, Carolina Blouse was essentially a production entity. However, from the inception of the Lady Arrow business in 1969 until November of 1970, Carolina Blouse profited from and was paid directly by Lady Arrow for the goods the partnership produced for Lady Arrow. From November of 1970 until the time of Mr. Shore's demise, MacShore Classics, Inc. profited from and billed Lady Arrow. This change in handling the Lady Arrow contracts was apparently brought about by the fact that any profits that accrued to Classics, at least in part, could be credited against the aforesaid carried forward tax loss of Classics. In any event, Classics, rather than Carolina Blouse, in November of 1970, began to bill Lady Arrow for the work produced by Carolina Blouse and, in turn, partially paid Carolina Blouse for its cost of production. Without full payment for the Lady Arrow productions, Carolina Blouse could not meet costs of production and, consequently, Classics financed the balance of same by loans to Carolina Blouse. The full financial details of these dealings are not revealed in the record. Although, both Classics and Carolina Blouse appear to have done "contract" work during their respective existences from the time the Lady Arrow account was obtained until Max Shore's death, neither entity conducted any manufacturing operations requiring sales forces.

The salient issues are as follows:

(1) Whether Reuben and Sidney Shore are obliged to account to Carolina Blouse and Classics in connection with the appropriation of the money and properties of these two entities since January 1, 1972, including the business arrangement enjoyed by Classics with Lady Arrow.

(2) Whether or not Reuben and Sidney Shore are, as surviving partners in Carolina Blouse, liable for a certain debt reflected on the books of MacShore Classics, Inc.

(3) Whether preferred stock in Classics held by Jean Segall and her children should be redeemed.

(4) The proper disposition of proceeds from a certificate issued by Washington Investors Plans, Inc. and

(5) The measure and amount of rentals due The Shore Company for its Greenville Plant.

Before discussing the five enumerated basic issues, it will be helpful to make an additional general observation which is supported by the weight of the evidence. The defendants Reuben Shore, Sidney Shore, and Morris Root do not appear to appreciate their responsibility as Executors and Trustees under the Will of the late Max Shore. As Executors they are held to a high standard of candor and trust when dealing with any asset of the Estate they have been entrusted to administer. Rather, the record reflects actions on their part typical of those taken by Max Shore when he was alive. The weight of the evidence indicates Max Shore, when alive, did in fact dominate the three entities in which his Estate has an interest. He solely made all meaningful financial and tax decisions in dealing with the two corporations and the partnership, Carolina Blouse, despite the fact that his two adult sons were equal partners in Carolina Blouse. These defendant Executors and Trustees now must account to the Court for their actions, and may not deal with the assets of the estate free from accountability as Executors and Trustees.

## QUESTION I

Whether or Not the Plaintiffs are Entitled to an Accounting of the Business Conducted by the Defendants Sidney Shore and Reuben Shore since January 1, 1972.

I have fully reviewed the finding and conclusion of the Master establishing the obligation of Reuben Shore and Sidney Shore to account to Carolina Blouse and Classics in connection with appropriation of the monies and properties of this partnership and corporation since January 1, 1972, and I have concluded that they are correct. I concur with the Master's construction of the order of Judge Eppes which postponed the defendants' duty to account for their operations pending a determination that the plaintiffs are entitled to such an accounting, and I expressly hold that this determination has now been made and that the defendants are hereby ordered to present full accountings of their operations since January 1, 1972, at such hearings for this purpose as may be scheduled by the Master.

It is clear enough that in order to fund the operations beginning January 1, 1972, Reuben Shore and Sidney Shore simply took over the business being done by Carolina Blouse and Classics at the close of December, 1971. They have used machinery and equipment which belongs to Carolina Blouse. The business arrangement with Lady Arrow was a business opportunity belonging to Classics. To assure themselves of neded funds, they simply made a withdrawal from Classics of $72,000.00 in cash on January 31, 1972. It appears that the only significant business done by them has been the Lady Arrow business. In the hearings to be held, the defendants are required to account to Carolina Blouse and Classics for the monies and properties taken from each of these entities, and profits realized from this business since January 1, 1972. The Master has correctly found that in the determination of such profits only the reasonable expenses of manufacturing may be deducted, including reason-

able salaries, and that restoration of any amounts beyond this must be compelled.

The defendants Reuben Shore, and Sidney Shore, as executors, were under a duty to promptly liquidate Carolina Blouse. They are, as Executors and Trustees, in an entirely different status than mere partners in a dissolved partnership. They must account to the Court for profits which have accrued as a result of the operation of the partnership since the death of Max Shore. Carolina Blouse, within the Shore enterprises, was a going business at the death of Max Shore. It should have been promptly liquidated, with the Estate being compensated on the basis of the fair market value of the interest of Max Shore.

## QUESTION II

Whether or Not the Defendants, Reuben Shore and Sidney Shore are as Surviving Partners in Carolina Blouse, liable for a Certain Debt Reflected on the Books of Mac-Shore Classics, Inc.

Large sums of money are reflected on the books of MacShore Classics as having been loaned by Classics to Blouse during the lifetime of Max Shore. This book debt as of December 31, 1971 amounted to $613,-427.00. A review of the earnings for Blouse and Classics for the years 1964-1971 shows that Classics lost a total of $738,343.00 while Blouse lost only $18,784.00. It is not clear that Max Shore and his two sons treated the sum of $613,427.00 as a genuine debt, although it was so entered in the books of the companies, and was treated as a debt in the tax returns of the companies, the partnership and the individuals.

As pointed out above, Max Shore totally dominated the financial and tax aspects of his enterprises. The record reveals that the Lady Arrow business was lucrative, and it may be inferred that this lucrative business was channeled by Max Shore from Carolina Blouse into Classics in order

to avoid taxes, taking advantage of Classics' carried forward tax loss. Aside from any possible tax questions, as between Max Shore (now his estate), Reuben Shore and Sidney Shore, there is a substantial question as to the genuineness and extent of the debt of Blouse to Classics. Additional testimony is needed to resolve this question. It may well be the adult parties may agree among themselves on a resolution of this difficult question. If so, in order to protect minor beneficiaries, such an agreement must be approved by the Court.

Defendants' exceptions are sustained to the Master's conclusion that the debts of Carolina Blouse on the books of Classics at the death of Max Shore are obligations of the surviving partners. An analysis of the dealings between Carolina Blouse and Classics is necessary in order to determine this question. The weight of the evidence indicates Max Shore diverted profits from Lady Arrow contracts to Classics for tax purposes. There is no showing that Reuben Shore and Sidney Shore intended or agreed to become liable for losses thus artificially created.

## QUESTION III

Whether or Not the Preferred Stock in Classics held by Jean Segall and Her Children Should be Redeemed.

At the time of the death of Max Shore, Jean Segall and her two children each held, as a gift from Max Shore, $18,000.00 of preferred stock in Classics, a total of $54,000.00. Like totals of preferred stock were given to each of the families of Sidney Shore and Reuben Shore by Max Shore during his lifetime.

The preferred stock held by Reuben Shore, his wife, Mary, and his son Eric, totalling $54,000.00, was redeemed on July 6, 1971. This was pursuant to resolution of the Board of Directors of Classics.

On August 20, 1971, $18,000.00 in preferred stock standing in the name of Jeffrey Shore, a child of Sidney was re-

deemed. On April 4, 1972, following the death of Max Shore, preferred stock standing in the name of Ronald Shore and Bryan Shore, also children of Sidney, was redeemed, each of the children being paid $18,000.00. Although Jean Segall was an officer and Director of Classics following the death of her fahter, she was not consulted and received no notice of the redemptions on April 4, 1972. Equity, of course, would require redemption of the shares of the children of Jean Segall and her own shares if those of the other families were to be redeemed. Moreover, it appears that following the death of Max Shore, the parties provided under an agreement dated April 19, 1972, discussed further below, that this stock would be redeemed.

While exceptions are taken by the defendants to the provision of the Master's Report requiring redemption of the plaintiffs' preferred stock, they are not tenable. In fact, they appear to contradict the position of defendants' counsel taken in their brief and before the Master. It is therefore conceded there is no real disagreement that this preferred stock should be redeemed.

The Master has properly found that plaintiffs' preferred stock should be redeemed and has correctly prescribed the terms and conditions of redemption.

## QUESTION IV

The Proper Disposition of Proceeds from a Certificate Issued by Washington Investors Plans, Inc.

I have concluded that the report of the Master provided for proper disposition of the proceeds from the certificates issued by Washington Investors Plans, Inc. The proof is strongly convincing that Max Shore intended Jean Segall to be the owner of this asset. Moreover, her rights to this property were recognized by the individual defendants in a provision under an agreement of the parties of April 19, 1972, which was to be effective even though a proposed Shore business sale to Lady Arrow did not occur.

I concur in the view of the Master that at the minimum a parol trust of this property was created by Max Shore during his lifetime and that Jean Segall became the beneficial owner of this property prior to the death of Max Shore.

Under the agreement of April 19, 1972, Jean Segall is to distribute 20 percent of the proceeds of this certificate, including interest, for the benefit of the grandchildren of Max Shore and his son Mordecai S. Shore, less any taxes chargeable thereto. I am advised that there are seven such persons, including Mordecai S. Shore. It appears that the Master inadvertently named Mary Shore as a grandchild of Max Shore whereas she is in fact the wife of Reuben Shore. Therefore, the proceeds for division by Jean Segall shall be divided into seven parts and shall be paid out and administered as provided in the Master's Report, except that Reuben Shore as trustee shall receive only one-seventh of the amount provided for distribution, to be held by him as such trustee for Eric Shore, and no payment shall be made for the benefit of Mary Shore. The finding of the Master adequately protects the interests of the minors involved and is confirmed.

It appears that Jean Segall is agreeable to this distribution, but excepts to the provision in the Master's Report for immediate distribution and asks that the report be modified to provide that such distribution should occur at the time of the discharge of other obligations involved in the liquidation of Carolina Blouse. I conclude that such distribution may properly be deferred until the final determination of this action.

## QUESTION V

The Measure and Amount of Rentals Due the Shore Company for its Greenville Plant.

Since shortly after the death of Max Shore, the defendants Sidney Shore and Reuben Shore have occupied the Greenville plant of Shore Company with the operation which they describe as their new Carolina Blouse partnership. Although these defendants contend that they occupy only a portion of these facilities, and that their rental should be determined accordingly, the evidence, including defendants' own testimony, clearly shows that their operation is spread over most of the entire plant, leaving no portion thereof available for leasing to third parties. Both plaintiffs and defendants presented testimony as to rental value ranging from defendants' contention that the rental which they are now paying, namely, $60,000.00 a year, is adequate for the amount of space which they need (54,000 square feet) to the plaintiffs' testimony of the following fair rentals for the entire plant:

| 1971 | $168,800.00 |
| 1972 | 181,577.00 |
| 1973 | 193,300.00 |

Since they occupy the entire facility as a practical matter, these defendants cannot be heard to say that they are obligated to pay for only the portion which they "need". By their own testimony, $60,000.00 a year would be fair rental for 54,000 square feet or approximately 36% of the 148,000 square feet of the entire facility, leading to the conclusion that their own evaluation would place a fair annual rental in excess of $180,000.00 on the entire facility. It is worth noting that these same properties were leased by these same parties from September, 1959 to September 1969, for $120,-000.00 per year. Further, the proposed sale to Lady Arrow, approved by Reuben and Sidney Shore, would have involved an annual rental for these facilities of $130,000.00. The findings and conclusions of the Master, therefore, are

amply supported by the evidence, and well within the reasonable limits of fair rental value.

While the defendants Reuben Shore and Sidney Shore have wrongfully neglected to dissolve Carolina Blouse, and have appropriated to themselves the Shore lease, the Blouse machinery and the Lady Arrow business opportunity, there is testimony they have paid taxes and maintained the Shore property. They will be permitted to prove such expenditures and set them off against the fair rental of the premises.

## CONCLUSION

By amendment to the complaint, properly allowed by the Master, plaintiffs specifically request that the relief ordered by the Court include dissolution of the corporate defendants, The Shore Company and Classics, or in the alternative, the purchase at their fair value of all shares of any stock in said corporation as to which the plaintiffs have any interest, such purchase to be either by the corporation or by the other shareholders thereof. In my opinion, this relief was already available to the Court in the fashioning of its remedies for the waste and mismanagement ordinarily alleged. In any event, the Master in allowing the amendments fully protected the rights of the defendants by affording them the right to plead and offer additional testimony and arguments. Hearings for this purpose may be held at such time as the Master shall schedule the same.

The disposition of the issues discussed above leaves a number of related questions considered in detail by the Master in his report. These questions are properly analyzed and decided in the Master's Report and need not be discussed in this Decree. Therefore, except as otherwise hereinabove provided, IT IS ORDERED that the Master's Report be and the same is hereby CONFIRMED, and this matter is again referred to the Master for additional hearings as provided herein.