## 8006
## KENNEDY v. HILL.

1. PARTNERSHIP.—Where members of a partnership stipulate in the partnership contract the value of the property put in by each, the Court has no authority to put a different value on the property, in the absence of fraud or imposition.

2. IBID.—Under the provision in a partnership contract that in the event of dissolution "the stock and other assets are to be taken at their actual value" and divided according to the capital stock put in, the assets, on dissolution, should be valued by the partners, and this valuation used as a basis for fixing the rights of the partners, but where they cannot agree on a valuation it is proper for the Court to order an appraisement.

3. IBID.—THE PROFITS in this partnership under the contract is the difference between the appraised value of the firm assets, and the partnership debts and capital stock.

4. IBID.—The general rule that assets of a partnership must be used to pay capital stock, before profits, is modified by the partnership contract here by the provision that the settlement shall be based on a *valuation* of assets at time of dissolution, and the funds obtained by the receiver from *sale* of assets must be paid to capital stock and profits in proportion to these items as ascertained by such valuation.

5. IBID.—INTEREST.—Where under a partnership contract one partner is to pay to another interest on capital put in by the latter, such interest ceases at date fixed for dissolution.

6. IBID.—IBID.—The individual account of partners due the partnership should draw interest from date of dissolution and these accounts should be regarded as assets in hands of receiver.

7. IBID.—COSTS.—In winding up the affairs of a partnership, it is within the discretion of the Court to require one partner to pay the costs of the receivership.

8. IBID.—PARTITION.—In the division of partnership assets, the Court is warranted in adopting the valuation put on machinery by disinterested appraisers against the valuation placed on it by the party to whom it is assigned, and interest should be charged on such property from date it is delivered to the assignee by the receiver.

Before KLUGH, J., September, 1909, and ERNEST MOORE, Special Judge, January, 1910, York.   Modified.

Action by Chris. L. Kennedy and Porter B. Kennedy, formerly members of Hill, Kennedy & Company, against W. L. Hill. Both parties appeal.

*Messrs. Finley & Jennings* and *J. Hardin Marion,* for appellant. *Mr. Marion* cites: *Recitals as to amount contributed to partnership capital may be explained:* 22 Ency. 86; 86 Ind. 503. *Partnership accounting:* 22 N. Y. 178; 10 Rich. 64. *Interest on partnership account:* 22 Ency. 125-6; 3 Mason 284.

*Messrs. Geo. W. S. Hart* and *Witherspoon & Spencers,* for defendant. *Mr. Hart* cites: *Contribution to capital stock may be inquired into:* 22 Ency. 86, 71; 33 S. C. 179.

The opinion in this case was filed July 24, but held up on petition for rehearing until

September 6, 1911. The opinion of the Court was delivered by

MR. JUSTICE WOODS. In this action for the dissolution and settlement of a partnership between the plaintiffs and the defendant, a receiver was appointed on account of irreconcilable differences and disputes between the partners, and the assets are now in his hands. The questions to be determined relate to the distribution of the assets between the plaintiffs and the defendant. The record contains two reports of Mr. J. Lyles Glenn as referee, decrees by Judge Klugh and Special Judge Moore, and numerous exceptions to these reports and decrees. We shall not state the various steps in the protracted litigation, nor refer in detail to the many exceptions, for the reason that it is conceded on all sides that the rights of the parties and the method of stating the accounts depend on the construction of the partnership contract.

Before the partnership was formed the defendant had been conducting a mercantile business at Sharon for about

fifteen years. The plaintiffs, Chris. L. Kennedy and Porter B. Kennedy, under the firm name of Kennedy Brothers, had been engaged in the mercantile business at the same place for about three years. The two concerns were merged into a new partnership, and a formal written agreement was signed on June 14, 1906, in which it was recited that the partnership had been actually formed on May 20, 1905. The following provisions of the partnership contract bear upon the questions at issue:

"Life of partnership. The partnership is to expire by its own limitation, on the first day of January, 1907: provided, that it shall be incumbent upon the member or members desiring a dissolution of the partnership at that time to give written notice, not less than thirty days prior to the first day of January, of such desire; and the effect of the failure to give such notice shall be to extend the life of the partnership for one year; and so, from year to year, the partnership may be dissolved on any first day of January, commencing with January of 1907, by the giving of such written notice, by any one or more of its members, thirty days prior to the first day of January, the failure to give such notice to result in extending the life of the partnership for one year.

"Capital stock. The capital stock of the firm is to be one hundred and five thousand dollars. * * *

"Division of profits. The profits and losses are to be equally divided. W. L. Hill has contributed eighty thousand dollars to the capital stock and C. L. and P. B. Kennedy twenty-five thousand dollars. C. L. Kennedy and P. B. Kennedy are to pay W. L. Hill interest at eight per cent. per annum on forty-five thousand dollars; that is to say, interest on $22,500 that W. L. Hill loans to each of them (out of $80,000) to give them an equal interest in the profits. * * *

"Dissolution. In the event of dissolution the stock and other assets are to be taken at their actual market value,

W. L. Hill to receive 80-105ths and the two Kennedys 25-105ths. Provision must of course be made for the indebtedness of W. L. Hill and Kennedy Brothers, that was outstanding when the partnership was formed.

"Where moneys of the new firm are used for that purpose, a strict account must be kept; and the accounts so paid shall bear interest at the rate of eight per cent. per annum (to be paid by the party for whose benefit the moneys are so used). For convenience it is agreed that the interest shall be computed from the end of the month in which the moneys are so used, upon the aggregate of the sums so paid."

Under the clause first quoted W. L. Hill gave due notice of his desire that there should be a dissolution on January 1, 1907. The partners undertook to make the dissolution settlement, but fell into disputes about the meaning of the contract; and the plaintiffs brought this action for a settlement under the orders of the Court. It will be observed that under the contract the Kennedys had together only twenty-five one hundred and fifths interest in the capital, while they had together two-thirds interest in the profits. Hence it was to their advantage that as little as possible of the firm assets should be regarded capital and as much as possible profits. Hill, on the other hand, was interested to make the capital as large as possible and the profits as small as possible. Nearly all the entanglement of this complex cause unwinds on the adjudication of this point. The main question then is what portion of the assets now in the hands of the receiver shall be regarded capital and what portion profits.

Judge Klugh held that the property put into the new firm, consisting of the assets of the Kennedy and Hill mercantile establishments, was shown by the evidence to be worth only $84,000, and that therefore that sum and not $105,000, as stated in the contract, should be taken as the original capital. Carrying out this view he held the contribution of Hill to the capital stock to have been

30—89

$64,000 and that of the Kennedys $20,000. He held further that the net assets in the hands of the receiver should be applied to the repayment of the capital stock of $84,000 and the remainder regarded as profits and paid out to the parties in equal shares as provided by the partnership contract.

We are unable to agree to the first conclusion for the reason that it seems to us to be a substitution of that which the Court thought it would have been prudent for the parties to agree to for the agreement which they actually made. They expressly agreed that the capital stock should be $105,000, and recited in the contract that "W. L. Hill has contributed $80,000 to the capital stock and C. L. and P. B. Kennedy $25,000." There is no evidence of fraud or imposition in this valuation of the property, nor is there any dispute that the property was actually received by the firm. Judicial authority can no more alter the contract by substituting what seems to be a true valuation for that agreed upon by the parties than it can refuse to enforce or undertake to reform a contract for the purchase of land on the ground that the price agreed on was beyond the real value of the property. The contract may have been improvident, but persons who are *sui juris* cannot have relief from their agreement on that ground.

We think there was also error in holding that the entire assets must be applied to the repayment of the capital stock. Such a conclusion is inconsistent with the following provision of the contract: "In the event of dissolution the stock and other assets are to be taken at their actual market value, W. L. Hill to receive 80-105ths and the two Kennedys 25-105ths." This indicates that the partners did not contemplate that dissolution and settlement of the affairs of the firm should be made by reducing the assets to cash by sale or otherwise; but on the contrary, that the stock and other assets should be taken, that is, listed and appraised at their market value, and a settlement of the firm

affairs made on that basis. The design of the partners and the purpose to be gained in this taking of stock was the ascertainment of the value of the whole and the value of the share of each partner. The only ultimate end to be attained by this ascertainment of values was to enable the partners to divide the assets among themselves. It was contemplated that when the total market value had been fixed by the taking of the stock and other assets, it should be the basis for the ascertainment of the rights of the partners with respect to partnership matters including profits and losses.

This seems clearly to be the meaning of the contract as written, and it was the interpretation placed on it by the partners themselves; for when they undertook to make the settlement they commenced by taking stock. Unfortunately they could not agree and the Court is deprived of the benefit of an appraisement of the property at its market value made by the partners on January 1, 1907, the date fixed for dissolution. But the Circuit Court very wisely ordered an appraisement by three disinterested persons. That appraisement must be regarded as taking the place of the estimate the parties themselves were to make—subject of course to correction by adding any omitted items of either assets or liabilities, or by correcting any clear mistake of fact. The gross value of the assets as fixed by the appraisement was $139,856.97. The deductions made by the appraisers, together with the debts of the firm not taken into account by them, aggregated $28,869.18. This left as the assets on hand as valued by the appraisers $110,987.79. The net profit at the date of dissolution was therefore $5,987.79. These are the figures reported by Mr. Glenn in his statement of the accounts on the principle which we have adopted. They were obtained by an appraisement made as soon as possible after dissolution and represent as nearly as possible what would have been the result of the settlement among the partners according to the scheme contemplated by the contract.

It is admitted that the assets which the receiver will have for distribution will not be sufficient to liquidate both the capital and profit account. So that it is necessary to determine how the funds in the hands of the receiver shall be distributed. The general rule is that stated by Special Judge Moore, namely, that the assets must be applied to the payment of the capital stock until it is refunded and the remainder only distributed as profits. The rule is not without exceptions, however, and is subject to the contract of the partners when creditors are not interested. In this case, as we have endeavored to show, the partners contracted to ascertain the relative proportion of capital and profits by a valuation of the assets at the date of dissolution, and not by actual reduction into cash. The depreciation of the assets valued under the contract at $110,987.79, due to the failure of the partners to settle under the contract, must be apportioned between the capital as stated in the contract as $105,000 and the profits as ascertained under the contract as $5,987.79. The funds realized by the receiver from the assets must therefore be applied to capital and profits in the proportion that $105,000 bears to $5,987.79.

In adjusting the individual accounts of the partners the charge of interest on $45,000 which the Kennedys were to pay to Hill "to give them an equal interest in the profits" should cease on January 1, 1907, the date of dissolution. The profits having ceased to accrue at that time, this interest charge was likewise at an end.

As to other items, the individual accounts of the partners owing at the time of dissolution should bear interest from the date of the dissolution; and these accounts should be regarded as assets in the hands of the receiver applicable to capital and profits in the proportion above indicated.

Judge Moore properly held that no interest should be allowed on the capital contributed by the partners; but he

also held that certain interest on the funds earned by the receiver should be credited to the capital account. Under the view we have taken, the interest so earned falls into the general fund to be applied along with the other assets to capital and profits according to the proportion above stated.

It was within the discretion of the Circuit Court to require the defendant to pay the costs of the receivership, and we think the record shows that the discretion was justly exercised.

The judgment of this Court is that the decrees of Judge Klugh and Special Judge Moore be modified to conform to the conclusions herein stated, and that the cause be remanded to the Circuit Court for such further proceedings as may be necessary.

September 6, 1911. PER CURIAM *order dismissing petition for rehearing.*.

The point referred to in the petition was considered by the Court before the decree was filed, but it seemed to require no special mention. The defendant, it is true, testified that the ginnery was worth only $2,250, but he did not testify that there had been any depreciation after the appraisement; and the impartial judgment of the appraisers fixing the value at $3,000 was properly adopted by the Circuit Court in preference to the estimate of an interested party. Since the receiver has had the rent of the ginnery the charge of $3,000 to the defendant will of course bear interest only from the date on which he takes possession.

It might have been more logical to require the receiver to dispose of the ginnery along with the other assets, but it does not appear that any substantial injustice will result from assigning it to the defendant at $3,000, and the Court is unwilling to disturb the Circuit decrees on that point.

The petition for rehearing is dismissed, and the order staying the remittitur is revoked.