## 20457

Jean SEGALL et al., Appellants, v. Reuben SHORE et al., Respondents.

(236 S. E. (2d) 316)

32

*Messrs. David L. Freeman* and *James C. Parham, Jr., of Wyche, Burgess, Freeman and Parham, Greenville,* and *Thomas H. Pope of Pope and Schumpert,* Newberry, *for Appellants,*

*Messrs. J. D. Todd, Jr.,* and *Carl Ferguson, of Leather-wood, Walker, Todd and Mann,* Greenville, *for Respondents,*

June 27, 1977.

LITTLEJOHN, Justice.

This case has previously been before this Court and is reported in 264 S. C. 442, 215 S. E. (2d) 895 (1975). This opinion is supplementary thereto, and a reading of our prior opinion will make it unncessary to repeat herein the background information which gives rise to the present appeal.

In the other appeal this Court adopted the order of the Honorable Clarence Singletary, Circuit Judge. In a well-reasoned order, Judge Singletary discussed the issues at length and confirmed the master's first report. His order, and the opinion of this Court affirming it, referred the matter again to the master for additional hearings for purposes set forth in the order, which was printed as our directive.

The master held additional hearings and filed his second report with the circuit court, along with his recommendations. The defendants excepted to the report and the matter came to be heard before Circuit Judge Frank Eppes, resulting in his order of July 27, 1976, rejecting in substantial degree the recommendations of the master.

The master, in his second report, properly set forth the issues for determination, as follows:

1. The final determination of amounts to be paid into MacShore Classics and The Shore Company by the defendants pursuant to the opinion of the Supreme Court;

2. The determination whether the interests of the plaintiffs in the shares of stock in the two corporations should be redeemed at their fair value pursuant to Section 12-22.15 (a) (4) of the Code; and

3. The determination of attorneys' fees, costs and expenses involved in the recovery ordered for the benefit of the two corporations.

> This is an equity matter in which the master and the circuit judge are in disagreement. In such a case, this Court has jurisdiction to review the entire record

and make findings in keeping with our view of the preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976).

## I.

In our prior opinion we said:

". . . [I]n the hearings to be held [before the master] the defendants are required to account to Carolina Blouse and Classics for the monies and properties taken from each of these entities and the profits realized from this business since January 1, 1972."

In determining the profits, we held that,

". . . [O]nly the reasonable expenses of manufacturing may be deducted, including reasonable salaries, and that restoration of any amount beyond this must be compelled."

In keeping with this directive the master found that the defendants and Carolina Blouse should account to Classics for all profits. The lower court overruled this finding and ordered that profits made by Carolina Blouse should be divided between the plaintiffs and defendants. The plaintiffs submit that the judge misinterpreted our prior opinion. We agree. It was the directive of this Court that all profits be accounted for to Classics. The recommendations of the master that Sidney and Reuben Shore account for $1,067,752.00 plus interest beginning on September 30, 1975, should have been adopted. This amount is in addition to $175,000.00 improperly withdrawn by them subsequent to September 30, 1975, plus interest thereon from December 5, 1975.

## II.

The master held that the plaintiffs were entitled to have their stock in The Shore Company redeemed by reason of § 12-22.15, Code of Laws of South Carolina (1962) *as amended* (Supp. 1975). It reads in part:

"§ 12-22.15. Dissolution pursuant to court order.— The courts of this State shall have full power to decree the

dissolution of and to liquidate the assets and business of, a corporation:

"(a) In an action filed by a shareholder, when it is established that:

. . . . .

"(4) The acts of the directors or those in control of the corporation (A) are illegal or fraudulent or dishonest, or (B) are oppressive or unfairly prejudicial either to the corporation or to any shareholder whether in his capacity as a shareholder, director, or officer of the corporation.

"(5) The corporation assets are being misapplied or wasted.

. . . . ."

The circuit court rejected the master's recommendations and held that The Shore Company need not redeem plaintiffs' stock and, further, held that the price for redemption, in any event, was incorrect. In that regard, the master found:

"The conduct of the defendants in this case leaves no question but that the basis for the exercise of this relief exists. Before finally being enjoined from further withdrawals on November 15, 1975, Sidney Shore and Reuben Shore, with the willing compliance of Morris Root, had appropriated more than $1,000,000 of the proceeds from the Lady Arrow business to their own uses. Although they were in court under a duty to account, they sought to shield their operations from view by securing a court order denying any ownership on the part of the plaintiffs. They continued their withdrawals even after the Supreme Court had issued its opinion establishing the duty to restore profits and to account. Perhaps most significantly they have now in what appears to be a clear and direct act of contempt taken an additional $175,000 by checks written on December 4 or December 5, 1975, for the payment of income taxes on behalf of Sidney Shore and Reuben Shore. The defendants cannot be heard to contend that they were unaware of their responsibilities in the handlings of the affairs with which

they have been entrusted. They have consistently abused their positions of trust and I find and conclude that they have misapplied and wasted the assets of The Shore Company and MacShore Classics, Inc.; that they have acted oppressively and unfairly to the interests of the plaintiffs and to their prejudice; and that the business and affairs of these corporations can no longer be conducted to the advantage of the shareholders generally. . . ."

The plaintiffs except to the lower court's reversal of the master's finding.

The findings and conclusions of the master are abundantly supported by the record and we hold that the stock of plaintiffs in The Shore Company as well as in MacSHORE CLASSIS must be redeemed.

### III.

While holding that it was unnecessary to consider a proper sum in payment for the redeemed stock, the judge went on to hold that the amount recommended by the master was in error. In essence, he held that a liquidation appraisal, instead of a going-concern appraisal, should be used. He rationalized that if the corporation were liquidated, there would be a tax item in the amount of $466,-479.00 and this figure was deducted from the $1,644,831.00 value placed on all outstanding stock in The Shore Company as of September 30, 1975. In *Santee Oil Co., Inc. v. Cox,* 265 S. C. 270, 217 S. E. (2d) 789 (1975), we discussed the appraisal of stock at length. Concededly, stock in a closely held, going concern is often difficult to appraise, and the appraisal must be made in the light of all the facts. There is no reason to presuppose the liquidation of The Shore Company. When and if it is ever liquidated, Sidney and Reuben Shore may or may not be stockholders. The assets may be great or small. Upon plaintiffs' receiving cash for their stock, they must, of course, pay capital gains tax. The effect of the judge's ruling is to subject their interest first to a corporate tax, which may never be paid, and sec-

ondly to a capital gains tax which obviously must be paid. The valuation placed upon all shares of stock in the amount of $1,644,831.00 is supported by the record, and we agree that this figure should be used.

## IV.

As stated hereinabove, we held in our previous opinion that Carolina Blouse must account to Classics and that ". . . reasonable expenses of manufacturing may be deducted including reasonable salaries . . ." In this regard, the master found that Reuben Shore is entitled to no compensation, and held that Sidney Shore "is entitled to compensation in the sum of $42,500.00 per year, increased by five percent (5%) per year for each year commencing with 1972." The defendants excepted to this finding and the circuit judge sustained the exception, holding that Sidney Shore should be paid $75,000.00 per year and Reuben Shore should be paid $39,000.00 per year. The transcript on the previous appeal is before us. In the master's first report, which was confirmed by Judge Singletary and, in turn, affirmed by this Court, we find the following:

"Although Reuben Shore has apparently received substantial monies from Carolina Blouse Co. and continues to receive substantial payments from the purported new partnership, he lives in Philadelphia and is substantially inactive in the business.

. . . . .

"The argument that Reuben Shore deserved continued compensation for his role in securing the Lady Arrow business is untenable. I find that any efforts of Reuben Shore in obtaining the Lady Arrow business occurred at the time when he was employed in the marketing subsidiary of Mac-Shore Classics and that Classics was entitled to and has realized the profits from this business."

In that first report, the master did not attempt to finalize the issue of Reuben Shore's compensation, but in the second

report, after additional testimony was submitted on the issue, he determined:

"I find and conclude that Reuben Shore is entitled to no compensation. Throughout this action, he has lived in Philadelphia, and he has been wholly inactive in the business. This point is not refuted by any evidence from the defendants. In fact, it is explicitly confirmed by them . . ."

He went on to recite that Reuben Shore procured the Lady Arrow business for Classics while he was an employee of one of Classics' subsidiaries, MacShore Marketing. He was being paid by the subsidiary for procuring the business for Classics and the securing of the account was a business opportunity belonging to Classics. We agree with the master that Reuben Shore is entitled to no compensation, and that $42,500.00 per year, with increments as indicated hereinabove, is appropriate compensation for Sidney Shore.

## V.

The master recommended that attorneys' fees be allowed counsel for the plaintiffs in the amount of $185,000.00, to be paid 12% by The Shore Company and 88% by Classics. Upon exceptions taken, the circuit judge reduced the amount to $75,000.00, to be paid in the same proportions. Plaintiffs have excepted to the judge's ruling and ask that the recommendations of the master be approved by this Court.

This litigation has extended over a period of almost five years and is not yet completely terminated. The transcript of record in the first appeal encompassed 807 pages, including the two addendums; the transcript of the second hearing and appeal encompassed 651 pages. It is obvious that counsel for the plaintiffs has met with lack of cooperation and resistance on the part of the defendants throughout. Sidney and Reuben Shore were supposed to be acting in a fiduciary capacity; their failure to perform their obligation made this litigation necessary. It is apparent that they have declined

to follow the good advice of their own attorneys. The finding of the master on this score is significant:

"Early in this case I found in my first Report that the duty and burden of accounting in this matter rest upon the defendants. This finding has been confirmed emphatically by the Circuit Judge and the Supreme Court. This clear duty and burden of accounting resting upon the defendants, and the extent to which they have or have not responded to same, form the background to, and reflect on, all other issues in the case. In these regards, the plaintiffs themselves have moved forward in an effort to bring to the attention of the Court to the extent possible all financial information and other evidence available to them which might reasonably bear upon the rights of the parties. In these arguments and analyses, plaintiff's have on occasion made recommendations to the Court which might be in the interest of the defendants as well as the plaintiffs, such as the respective tax consequences to the parties of various avenues open to the Court in disposing of the issues before it.

"In contrast, the defendants have not come forward in a positive way to account, and have appeared to adopt the position that their only duty was to respond to requests for specific items on the part of the plaintiffs; even in this regard, their response has been lacking. The result has been to place an unreasonable burden on the plaintiff to dig out and present the accounting evidence. In general, the documents and other evidence, containing the information and various analyses necessary for the determinations to be made by the Court, have been supplied on the initiative of and at the instance of the plaintiffs and not the defendants, and the record so reflects."

The record reveals testimony of credible witnesses, abundantly substantiating and justifying the $185,000.00 figure. Also, for this appeal, $15,000.00 additional shall be paid by the two companies in the same proportion to counsel for the plaintiffs. The assessment of these figures in the total amount

of $200,000.00 contemplates such additional work as counsel for the plaintiffs must perform to terminate this litigation and no additional fees shall be allowed unless the case is unduly prolonged.

## VI.

Finally, the master found as follows:

"The record of this case, however, reveals that the individual defendants have blatantly and repeatedly treated the mandates of this Court, the Circuit Court and Supreme Court with apparent contempt. I further find that to further countenance the conduct outlined above without appropriate response by the Court would be to tolerate a travesty on the judicial system and such response is accordingly recommended."

The defendants excepted to this finding. The lower court, without dealing with this question, inferentially sustained defendants' exception. The plaintiffs have not excepted to the judge's ruling, but this Court cannot ignore the matter and revives *ex mero motu* the issue with leave to counsel to apply for a rule to show cause on a citation for contempt.

The case is remanded to the lower court for the purpose of carrying out the directive of this Court as indicated hereinabove.

Reversed and Remanded.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.