0866

William C. WEEKS, Individually and as a partner of Harris, McMillan, Hudgins & Co., a general partnership, Respondent v. W. M. McMILLAN, Sara B. Penn, Robert Cooper, and Toni McKinley, Individually and as partners of Harris, McMillan, Hudgins & Company, a general partnership, and Harris, McMillan, Hudgins & Company, a general partnership, Appellants.

(353 S. E. (2d) 289)

Court of Appeals

*O. W. Bannister, Jr.,* of *Hill, Wyatt & Bannister,* and *R. Frank Plaxco,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for appellants.*

*Jesse C. Belcher, Jr.,* and *Donald L. Ferguson,* of *Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for respondent.*

Heard Nov. 11, 1986.

Decided Feb. 2, 1987.

CURETON, Judge:

Respondent William C. Weeks commenced this action for a court ordered confirmation of the dissolution of a partnership and for an accounting of his interest in the partnership. The remaining partners and the partnership counterclaimed for enforcement of a 1980 partnership agreement which they claimed precluded the dissolution and also contained a noncompetition clause which had been violated by Weeks. Weeks' reply alleged the 1980 agreement was void. From an order of the trial court ordering dissolution and an accounting, the partnership and remaining partners appeal. We affirm in part, reverse in part and remand.

In 1974, Weeks joined an established public accounting firm known as Harris, McMillan, Hudgins & Co. In 1980, appellant Sara Penn was admitted as a partner and a new partnership agreement was executed by all of the partners. Hudgins and Harris subsequently retired from the partnership and the partners agreed to admit appellants Robert Cooper and Toni McKinley as partners in 1983, but no new

partnership agreement was executed. By early 1984, Weeks had become disgruntled with the partnership and gave notice on July 31, 1984 that he elected to dissolve it. After a short period of cooperation between Weeks and the remaining partners, he was denied access to the partnership's records and files. This action followed.

By agreement of the parties, this matter was referred to the Master In Equity for Greenville County with authority to enter a final order appealable to the South Carolina Supreme Court. The master found *inter alia:* (1) that the 1980 partnership agreement was not in effect in July 1984; (2) the partnership was a partnership at will; (3) Weeks dissolved the partnership on July 31, 1984 by notice to the other partners; (4) the partnership in existence after admission of the last two partners did not adopt the terms of the 1980 partnership agreement; (5) the partnership should wind up its affairs and account to Weeks by use of the accrual method of accounting; (6) Weeks should be awarded attorney fees; (7) the noncompetition clause in the 1980 agreement, even if applicable, is void against public policy, and unenforceable under the statute of frauds; and (8) Weeks was entitled to interest on all sums found due him from August 3, 1984.

The issues on appeal are: (1) whether Weeks is bound by the terms of the 1980 partnership agreement and if so, does the agreement prohibit dissolution of the partnership, and is the noncompetition covenant in the agreement enforceable against Weeks; (2) whether the master abused his discretion in ordering an accounting using the accrual method; (3) whether attorney fees and prejudgment interest should have been awarded to Weeks; and (4) whether the master abused his discretion in ordering the appellant partners to bear the expenses of winding up the partnership. We will address these issues seriatim.

## DISSOLUTION AND THE NONCOMPETITION PROVISION

The threshold question in this appeal is whether the retirement of Hudgins and Harris and the admission of Cooper and McKinley effected a dissolution of the partnership. The master found that the change in the mem-

bership of the partnership resulted in a dissolution. We agree with the master. A dissolution is defined in Section 33-41-910, Code of Laws of South Carolina, 1976 as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." The common law rule is that both the admission of a partner and the withdrawal of a partner will effect a dissolution. 60 Am. Jur. (2d) *Partnership* Sections 177 and 178 (1972); 68 C. J. S. *Partnership* Section 347 (1950).

While the authorities are not in total agreement on whether the Uniform Partnership Act changes the common law regarding the causes for dissolution, it is generally accepted that since the Uniform Act only incorporated in part the common law on dissolutions, other means of dissolution known to the common law are not precluded by the Act. *Fenner & Beane v. Nelson,* 64 Ga. App. 600, 13 S. E. (2d) 694 (1941); *see,* Karesh, *Partnership Law And The Uniform Partnership Act In South Carolina,* 4 S.C.L.Q. 111 (1951); *see also,* 60 Am. Jur. (2d) *Partnership* Section 173 (1972). We hold that the withdrawal of two partners and the admission of two other partners worked an ipso facto dissolution of the partnership represented by the 1980 agreement.

We agree with the master that after the change in membership of the partnership in 1983, there then existed between the parties to this action a partnership in fact of indefinite duration, and an at will partnership. *McPherson v. J. E. Sirrine & Co.,* 206 S. C. 183, 33 S. E. (2d) 501 (1945). A partnership at will is subject to dissolution by the act of one or more partners at any time. *Id.*

The appellant partners also argue that the partnership existing after the change in membership adopted the provisions of the 1980 agreement and, thus, the partnership was not one at will. They further argue that because the partners adopted the 1980 agreement, Weeks is bound by the noncompetition clause in the agreement. We disagree. The 1980 agreement, even if adopted by the partners to this action, sets no definite time for termination of the partnership status and is, for all practical purposes, a partnership at will and subject to

dissolution by Weeks. *Id.* Moreover, as we read the 1980 partnership agreement, dissolution at the behest of a partner is not precluded by its language. Finally, we find that regardless of whether or not some portions of the agreement were adopted by all of the partners in the new partnership, the evidence is essentially uncontradicted that Weeks voiced objection to being bound by the noncompetition provision after the change in membership of the partnership, and never thereafter affirmatively agreed to be bound by the provision. Like any other contract, Weeks cannot be bound by partnership terms to which he did not agree. In any event, the appellants have not appealed the alternative finding of the master that the covenant is unenforceable under the statute of frauds. Where a decision is based on alternative grounds, either of which independent of the other is sufficient to support it, the decision will not be reversed even if one of the grounds is erroneous. *See, Dwyer v. Tom Jenkins Realty, Inc.,* 289 S. C. 118, 344 S. E. (2d) 886 (Ct. App. 1986).

## ACCRUAL METHOD OF ACCOUNTING

We find no abuse of discretion in the master's finding that the accounting should be accomplished by the accrual method. *Black's Law Dictionary* 18 (5th ed. 1979) defines the accrual method of keeping accounts as the method "which shows expenses incurred and income earned for a given period, although such expenses and income may not have been actually paid or received." Appellant partners claim that the accrual method of accounting would work an injustice to them because it would, among other things, cast upon them the total risk of uncollectible accounts. This contention is without merit since obvious adjustments can and should be made for uncollectible accounts and other contingencies. It is interesting to note that one of the appellants' exhibits reflects Weeks' interest in the partnership as of December 31, 1984 utilizing the accrual method.

## ATTORNEY FEES

We agree with the appellant partners that the master committed an error of law in awarding attorney fees to Weeks. As a general rule, attorney fees are not

recoverable absent authorization by contract or statute. *Duke Power Co. v. South Carolina Public Service Commission*, 284 S. C. 81, 326 S. E. (2d) 395 (1985). Recognizing this general rule, the master attempted to carve out an exception to the rule by holding that because appellant partners acted in bad faith causing Weeks to have to bring an action for dissolution and accounting, attorney fees are warranted. Weeks cites the case of *Segall v. Shore*, 269 S. C. 31, 236 S. E. (2d) 316 (1977) as supporting his claim for attorney fees. We read *Segall* differently.

*Segall* involved an action brought by shareholders of two corporations who were beneficiaries under the will of Max Shore, and a co-executrix of his will, principally against Reuben and Sidney Shore, who were also co-executors under the will as well as officers and directors of the two corporations and surviving partners of a partnership in which Max owned a one-third interest at the time of his death. *Segall v. Shore*, 264 S. C. 442, 215 S. E. (2d) 895 (1975). One of the issues in the case on remand was the amount of attorney fees, costs and expenses due the plaintiffs "in the recovery ordered for the benefit of the two corporations." The master found that Sidney and Reuben Shore had appropriated large sums of money belonging to the corporations to their own use and ruled that they should account for the monies. He also found that the plaintiffs should receive $185,000.00 in attorney fees to be paid by the corporations. The circuit court reduced the sum to $75,000.00, but the Supreme Court reinstated the $185,000.00 award finding that the lack of cooperation by the individual defendants made the litigation necessary. While not stated in the opinion, it is apparent that the award of attorney fees was based upon the "common fund theory" recognized in *Petition of Crum*, 196 S. C. 528, 14 S. E. (2d) 21 (1941), and/or the court treated the case as a shareholder derivative action. In any event, the plaintiffs' entitlement to attorney fees was not an issue on appeal in *Segall*. Only the amount of attorney fees was considered by the Supreme Court.

We are aware of the line of cases from other jurisdictions that would permit attorney fees where the losing party has acted in bad faith. *See, Hsu Ying Li v. Tang*, 87 Wash. (2d) 796, 557 P. (2d) 342 (1976). We have reviewed the cases cited

by the trial court for this proposition and find that the attorney fee awards in these cases were based on the "private attorney general" principle, the common fund theory or the courts' exercise of their inherent equitable powers. In *Hsu Ying Li*, the Supreme Court of Washington declared that "the power to award attorney fees springs from our inherent equitable powers (and) we are at liberty to set the boundaries of the exercise of that power." Conversely, as stated by Justice Harwell in *Duke Power Co. v. South Carolina Public Service Commission*, "[o]ur Supreme Court has clearly defined the occasions when an award of counsel fees may be made." 284 S. C. at 100, 326 S. E. (2d) at 406. Because we know of no South Carolina case that has adopted the bad faith exception to the general rule regarding the award of attorney fees, we must reverse the award.

### PREJUDGMENT INTEREST

The master was also in error in awarding Weeks prejudgment interest. No reason is given for the award. Appellant partners argue that the resolution of this issue hinges upon whether Weeks' demand was liquidated. A claim is liquidated if the sum claimed is certain or capable of being reduced to a certainty. *Dibble v. Sumter Ice and Fuel Co.*, 283 S. C. 278, 322 S. E. (2d) 674 (Ct. App. 1984). Generally, in the absence of an agreement, interest will not be allowed on partnership accounts until a balance is struck. *Karres v. Pappas*, 194 S. C. 512, 10 S. E. (2d) 15 (1940). Here, Weeks' claim is not liquidated because his entitlement to partnership assets cannot be determined under provisions of the Uniform Partnership Act until a "balance has been struck." Section 33-41-510(1) Code of Laws of South Carolina, 1976 provides that a partner is entitled to be repaid his contributions and share in the profits and surplus "remaining after all liabilities, including those to partners, are satisfied." Section 33-41-510(4) states that a partner "shall receive interest on the capital contributed by him only from the date when repayment should be made." This latter provision presupposes, however, that repayment should be made only after the amount owed the dissolving partner is

determined. *See*, 60 Am. Jur. (2d) *Partnership* Section 285.[1]

Weeks also argues that the master's award of interest ■ should be sustained on the principle that equity and good conscience demand such an award, citing *Anderson v. Purvis*, 220 S. C. 259, 67 S. E. (2d) 80 (1951). We see no indication in the record that the master's award was based on this principle. Moreover, we do not view the conduct of the appellant partners in insisting on a court determination of Weeks' right to dissolve the partnership of such a nature as to be unconscionable, thus entitling Weeks to recover interest on equity principles.

## EXPENSES OF WINDING UP THE PARTNERSHIP

Appellant partners argue the trial judge abused his ■ discretion in requiring them to bear all costs of winding up the partnership. They claim that this ruling is contrary to the provisions of Section 33-41-1060, Code of Laws of South Carolina, 1976. We disagree. Section 33-41-1060 sets forth the rules for establishing the assets of a partnership and lists the order of payment of liabilities of the partnership. It also provides the manner in which the partners shall be liable to satisfy the liabilities and share in the profits of the partnership. Nowhere is there any mention of how the costs of winding up a partnership shall be paid. Ordinarily, the costs and expenses of winding up a partnership should be borne by all partners. In equity, however, the court has discretion in ordering the payment of such costs and expenses. 68 C. J. S. *Partnership* Section 448 (1950). It is within the discretion of a court of equity to require less than all partners to pay the expenses of the wind up. *Kennedy v. Hill*, 89 S. C. 462, 71 S. E. 974 (1911).

The master's ruling that the appellant partners ■ should bear all costs of winding up is premised upon his finding that the recalcitrant attitude of the remaining partners caused most of the expenses associated with the winding up. While we have held that the appellant

---

[1] We do not understand Weeks to argue that he is entitled to interest for the use of his partnership property by the appellant partners subsequent to dissolution.

partners had a right to insist upon a court-ordered determination of Weeks' right to dissolve, nevertheless, they continued to use partnership assets after the dissolution for their exclusive benefit. The trial court's order does not require an accounting to Weeks of those benefits. We, therefore, see nothing inequitable about requiring the appellant partners to bear the costs of winding up the partnership. We find no abuse of discretion.

Accordingly, the order of the master is reversed on the matters of attorney fees and prejudgment interest and affirmed on all other issues. This case is remanded to the master for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.

BELL and GOOLSBY, JJ., concur.