THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Lana Dinkins and Oree Dinkins,       
Appellants,
 
 
 

v.

 
 
 
Kennecott Ridgeway Mining Company, Inc., Kennecott Holding Corporation, and Winnsboro Petroleum Company, Inc., Defendants,
Of whom Winnsboro Petroleum Company, Inc. is,       
Respondent.
 
 
 

Appeal From Fairfield County
Kenneth G. Goode, Circuit Court Judge

Unpublished Opinion No. 2005-UP-226
Heard February 8, 2005  Filed March 31, 2005

AFFIRMED

 
 
 
Donald E. Jonas, of Columbia, for Appellants.
W. Thomas Lavender, Jr. and Leon C. Harmon, both of Columbia, for Respondent.
 
 
 

PER CURIAM:  Lana and Oree Dinkins brought this action against Winnsboro Petroleum Co., alleging Lana suffered from physical and mental disabilities caused by the long-term ingestion of toxic petroleum solvents that leaked from underground storage tanks located on property near their home.  Orees claims were based on a loss of consortium.  The trial court granted summary judgment to Winnsboro Petroleum based on, among other things, the running of the statute of limitations.  The Dinkinses appeal.  We affirm.  
FACTS
Lana and her husband, Oree, lived on a lot in Ridgeway, South Carolina, from approximately 1956 to 1992.[1]  In late 1992, they sold the lot to a gold mining company (Kennecott) that operated nearby.  The lot was located beside a tract of approximately twenty acres that at one time was owned by Oree Dinkinss father, E.O. Dinkins.  E.O. Dinkins built a small country store on the property that began operation around 1948.  Gasoline was sold at the store, for which there was an underground storage tank system.    
Winnsboro Petroleum acquired ownership of the property held by E.O. Dinkins at a foreclosure sale in 1957.  Although he was no longer the owner, E.O. Dinkins thereafter operated the store with the permission of Winnsboro Petroleum until the store closed upon his death in 1989.  During its operation, Winnsboro Petroleum supplied gasoline to its store, pumping it into the underground storage tanks.    
In 1987, E.O. Dinkins filed suit to quiet title to the property and to enforce an alleged agreement that Winnsboro Petroleum would reconvey the property to him.  E.O. Dinkins contended that over the years he had paid a surcharge on each gallon of gasoline purchased in order to reclaim his property.  Winnsboro Petroleum alleged, however, that E.O. Dinkins operated the store with its consent and paid rent based on the amount of gasoline sold.  It denied there was ever any agreement to reconvey the property.    
The parties eventually settled the matter by Winnsboro Petroleum granting E.O. Dinkins and his wife a life estate in five acres of the property that included the store site.  E.O. Dinkins died in 1989.  His wife died a few years after her husband, at which time the life estate reverted to Winnsboro Petroleum.  
During the time the Dinkins store was still in operation, Lana and Oree Dinkins moved next to the property that Winnsboro Petroleum had acquired.  For their water supply, they initially used a well dug by Orees father.  After it went dry, they drilled a second well to supply water and, later, a third well.    
According to Lana Dinkins, they used the water from the third well, which had been dug near the Dinkins store, although they noticed the water had an odor and it didnt taste good.  Oree Dinkins also stated, [W]e knew the . . . [well water] wasnt hardly fit to drink, but we didnt . . . we didnt know why.  Despite the problems with the water, however, they never had it tested.    
Sometime in the late 1980s or early 1990s, Lanas health began to decline; she experienced blisters on her face and mouth, kidney infections, respiratory problems, and digestive problems.  She initially attributed her poor health to dust from gold mining activities near her home, and she visited several doctors.  On several occasions the South Carolina Department of Health and Environmental Control (DHEC) analyzed dust samples both inside and outside the Dinkinses home, but it concluded that they contained only road dust.  In late 1992, when Lanas health did not improve, the Dinkinses sold their property to the mining company.  
In 1993, Winnsboro Petroleum removed the two underground storage tanks from the store site pursuant to its participation in the State Underground Petroleum Environmental Response Bank (SUPERB) Act administered by DHEC.  The Dinkinses were both present when the tanks were removed.  Lana Dinkins recalled that she was very sick that day, but she noticed the tanks were crumbling and had a foul odor.  She also remembered that around that time there was much publicity about the clean up there[.]      
In early 2002, Lana and Oree Dinkins filed this action against Winnsboro Petroleum and others, alleging causes of action for negligence, negligence per se, assault and battery, and loss of consortium.  The Dinkinses asserted in pertinent part that, while residing at their home until approximately 1992, they depended upon three different wells for their water, all of which were located in close vicinity to the Winnsboro Petroleum property.  They alleged that the land owned by . . . Winnsboro Petroleum contained two deteriorated and corroded underground gasoline storage tanks that were leaking petroleum products and contaminants into the groundwater that supplied [their] drinking water.  The Dinkinses asserted the contamination had resulted in mental and physical health problems to Lana and a loss of consortium for her husband,
Oree.  
The trial court granted summary judgment to Winnsboro Petroleum based, in part, on the running of the statute of limitations.  The Dinkinses appeal. 
STANDARD OF REVIEW
When reviewing the grant of summary judgment, the appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP.  Fleming v. Rose, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).  Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.  Baird v. Charleston County, 333 S.C. 519, 529, 511 S.E.2d 69, 74 (1999).  In determining whether any triable issue of fact exists, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the non-moving party.  Summer v. Carpenter, 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997).
LAW/ANALYSIS
On appeal, the Dinkinses argue the trial court erred in granting summary judgment to Winnsboro Petroleum on its claims for negligence and negligence per se.[2]  We disagree.
As one of the grounds for granting summary judgment,[3] the trial court found that the action was barred by the three-year statute of limitations set forth in S.C. Code Ann. § 15-3-530 (2005).    
In applying the statute of limitations, South Carolina recognizes the discovery rule, which provides that the statute of limitations begins to run when a cause of action reasonably ought to have been discovered.  Dean v. Ruscon Corp., 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996).  The statute does not run from the date of the negligent act, but from when the injury resulting from the negligent act is discovered or may be discovered by the exercise of reasonable diligence.  McClain v. Jarrard, 354 S.C. 218, 580 S.E.2d 763 (Ct. App. 2003).
Our supreme court has interpreted the exercise of reasonable diligence to mean that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist.  Snell v. Columbia Gun Exch., Inc., 276 S.C. 301, 303, 278 S.E.2d 333, 334 (1981).  The statute of limitations begins to run from this point and not when advice of counsel is sought or [a] full-blown theory of recovery is developed.  Johnston v. Bowen, 313 S.C. 61, 64, 437 S.E.2d 45, 47 (1993).  Moreover, [t]he date of discovery is not when the plaintiff discovers a witness to support or prove his [or her] case.  Id. at 64-65, 437 S.E.2d at 47.
Whether the particular plaintiff actually knew he or she had a claim is not the relevant inquiry; instead, the date on which a discovery should have been made is an objective question.  Young v. South Carolina Dept of Corrections, 333 S.C. 714, 511 S.E.2d 413 (Ct. App. 1999).  The fact that the injured party does not comprehend the full extent of his or her injuries is immaterial.  Dean, 321 S.C. at 364, 468 S.E.2d at 647.  
In the case now before us, the trial court found that, although the complaint alleged that Lana had gradually become sick and was not definitively diagnosed with having gasoline exposure until 2001, her husband, Oree, testified that his wife had been sick for at least six or seven years prior to filing the complaint.  The trial court further noted that Oree testified that his father, E.O. Dinkins, had told him that he thought gasoline was escaping from the underground tanks.  This conversation occurred prior to the stores closing and E.O. Dinkinss death in 1989.    
In addition, both Lana and Oree testified that they were present when the underground storage tanks were removed in 1993.  At that time, Lana noticed the tanks were crumbling and had a foul odor.  She was also aware that E.O. Dinkins was of the opinion that gasoline was leaking from the tanks.  Based on these facts, the trial court concluded the Dinkinses were on notice that a potential claim might exist by 1992 or 1993 and that this action, instituted in 2002, was brought well outside the statute of limitations.  
Although we are sympathetic to the Dinkinses plight, we agree with the trial court that, viewing the evidence in the light most favorable to the Dinkinses, the statute of limitations has run on their claims.  Oree Dinkins stated he and his wife were both present when the tanks were removed.  Oree testified that his father, E.O. Dinkins, could not figure out why he had to purchase gasoline so often, telling him, I know I havent sold that much.  Oree also testified in his deposition that they knew the [water] wasnt hardly fit to drink, and Lana testified that the water had a foul odor.  Notes from a physicians visit Lana made on May 24, 1999 indicate that she had been sick for eight to ten years and that [s]he moved five years ago because she knew the water was bad.  
Based on the foregoing as well as the findings of the trial court, we hold the order of the trial court granting summary judgment to Winnsboro Petroleum should be 
 AFFIRMED.[4]
GOOLSBY, STILWELL, and HUFF, JJ., concur.

[1]  There is some variation in the dates in the record.  The trial court noted the Dinkinses moved to their property in 1956, which is the date testified to by Oree Dinkins; however, the date 1966 also appears in the record.    
[2]  As noted by Winnsboro Petroleum in its brief, the Dinkinses do not specifically assert arguments regarding their claims for assault and battery and loss of consortium.  Thus, we need not consider those claims here.  See Rule 208(b)(1)(B), SCACR (Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.); First Sav. Bank v. McLean, 314 S.C. 361, 444 S.E.2d 513 (1994) (concluding issues for which the appellant failed to provide any argument or supporting authority were deemed abandoned); Stier, Kent & Canady, Inc. v. Jackson, 317 S.C. 179, 452 S.E.2d 606 (Ct. App. 1994) (stating where the only argument in the appellants brief regarding an issue appeared in a footnote without any citation to authority, the argument was so conclusory that the issue was deemed abandoned). 
[3]  Since we agree with the trial court that the statute of limitations has run on the Dinkinses claims, that ruling is dispositive of the case and in itself supports affirming the grant of summary judgment to Winnsboro Petroleum.  Thus, we need not reach the additional grounds the trial court relied on in granting summary judgment.  See Fuller-Ahrens Partnership v. South Carolina Dept of Highways & Pub. Transp., 311 S.C. 177, 427 S.E.2d 920 (Ct. App. 1993) (holding when an appellate court affirms a trial courts grant of summary judgment on a particular ground, the appellate court need not discuss the remaining grounds); Weeks v. McMillan, 291 S.C. 287, 292, 353 S.E.2d 289, 292 (Ct. App. 1987) (Where a decision is based on alternative grounds, either of which independent of the other is sufficient to support it, the decision will not be reversed even if one of the grounds is erroneous.).
[4]  To the extent the Dinkinses further argue on appeal that Winnsboro Petroleum should be equitably estopped from asserting the statute of limitations, we find this argument is not properly before us because it was not raised to and ruled on by the trial court.  Talley v. South Carolina Higher Educ. Tuition Grants Comm., 289 S.C. 483, 347 S.E.2d 99 (1986) (holding an issue must be both raised to and ruled upon by the trial court to be preserved for appellate review).