**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Marc Y. Mckeiver, Appellant.

Appellate Case No. 2022-000324

---

Appeal From Dillon County
Paul M. Burch, Circuit Court Judge

---

Unpublished Opinion No. 2026-UP-066
Heard December 8, 2025 – Filed February 11, 2026

---

**AFFIRMED**

---

Dayne C. Phillips, of Price Benowitz, LLP, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Attorney General Mark Reynolds Farthing, of Columbia; and Solicitor William Benjamin Rogers, Jr., of Bennettsville, all for Respondent.

---

**PER CURIAM:** Marc Y. Mckeiver (Appellant) was convicted of trafficking in methamphetamine 100 grams or more, but less than 200 grams and sentenced to a twenty-five-year term of imprisonment and ordered to pay a $50,000 fine. On

appeal, Appellant argues the trial court erred by (1) refusing to suppress photographs obtained from Snapchat when the magistrate did not have the jurisdictional authority; (2) admitting photographs obtained from Snapchat when the evidence was not properly authenticated; (3) refusing to suppress the deceased confidential informant's (CI) live-feed video recording inside Appellant's home in violation of Article 1, Section 10 of the South Carolina Constitution; and (4) failing to grant a new trial or an evidentiary hearing following post-trial allegations of juror concealment. We affirm.

1.      Appellant argues the photographs obtained from Snapchat should have been excluded because the magistrate who issued the search warrant did not have the authority to issue a warrant to an out-of-state entity for records that were not physically located in the state. We disagree.

At trial, defense counsel argued the Snapchat photographs should not be admitted because the search warrant signed by the magistrate was invalid. Snapchat is not incorporated in Dillon County, defense counsel argued; therefore, the warrant was null and void because it was outside of the jurisdictional authority.[1] The court orally denied the motion to suppress the evidence obtained from Snapchat. Importantly, when making a ruling as to the jurisdictional issue, the court did not deny suppression based upon the invalidity of the search warrant, but rather it denied the motion based on the court's independent conclusions: (1) the investigating officers acted in good faith in obtaining and relying upon the judicially-issued search warrant because their actions were consistent with common practices in South Carolina at that time and (2) Appellant had no expectation of privacy in the information obtained from the search warrant because Appellant's public posting to "a mass of people" was analogous to placing an ad in a newspaper. The court found suppression was not warranted in Appellant's case *despite the purported invalidity of the warrant* because the good faith exception to the exclusionary rule was applicable and because Appellant did not have a legitimate expectation of privacy in the publicly posted photographs. On appeal, Appellant challenges neither the court's finding of good faith nor the lack of a

---

[1] In a case that was pending at the time of trial, our supreme court rejected this argument. *See State v. Warner*, 436 S.C. 395, 403-04, 872 S.E.2d 638, 642 (2022) (upholding the authority of a county magistrate to issue a warrant to an out-of-state cell phone service provider for cell-site location information records stored in New Jersey and holding the warrant was not invalid solely because the records were stored out-of-state).

reasonable expectation of privacy in his public posts.  Rather, he focuses solely on the argument that the search warrant was invalid based on the out-of-state records.[2] As such, the unappealed, independent conclusions of the circuit court became the law of the case and we affirm.  *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) ("[A]n unappealed ruling, right or wrong, is the law of the case"); *Weeks v. McMillan*, 291 S.C. 287, 292, 353 S.E.2d 289, 292 (Ct. App. 1987) ("Where a decision is based on alternative grounds, either of which independent of the other is sufficient to support it, the decision will not be reversed even if one of the grounds is erroneous").

2.     Appellant argues the photographs obtained from Snapchat should have been excluded because the photographs were not properly authenticated pursuant to Rule 901 of the South Carolina Rules of Evidence, by personal knowledge, distinctive characteristics, or testimony of a records custodian.  We disagree.

"Social media messages and content are writings, and evidence law has always viewed the authorship of writings with a skeptical eye." *State v. Green*, 427 S.C. 223, 230, 830 S.E.2d 711, 714 (Ct. App. 2019), *aff'd as modified on other grounds*, 432 S.C. 97, 851 S.E.2d 440 (2020).  "The requirement of authentication cannot be met by merely offering the writing on its own.  Something more must be set forth connecting the writing to the person the proponent claims the author to be." *Id.* at 231, 830 S.E.2d at 714 (internal citation omitted).  "Rule 901(b), SCRE, lists ten non-exclusive methods of authentication." *Id.* at 231, 830 S.E.2d at 715.  "Rule 901, SCRE, does not care what form the writing takes, . . .. All that matters is whether it can be authenticated, for the rule was put in place to deter fraud." *Id.* at 231, 830 S.E.2d at 714.  Under Rule 901(b)(1), SCRE, evidence may be authenticated by "having someone with personal knowledge about the writing testify the matter is what it is claimed to be." *Id.* at 231, 830 S.E.2d at 715.  "As long as a witness with personal knowledge testifies that an exhibit accurately portrays what it depicts, that should be sufficient to establish its authenticity."  3 Barbara E. Bergman et al., *Wharton's Criminal Evidence* § 14:2 (15th ed. 2021). Alternatively, "[m]ost writings meet the authenticity test through 901(b)(4), SCRE, which enables authentication to be proven by: '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.'" *Green*, 427 S.C. at 232, 830 S.E.2d at 715 (quoting Rule 901(b)(4)).

---

[2] Appellant's counsel conceded to this at oral argument.

We hold the trial court did not err in admitting the Snapchat photographs based on failure to authenticate. At trial, Agent Martin testified that he obtained Snapchat records for the account "duke_ttg" pursuant to a search warrant and identified the account as Appellant's based on posts showing Appellant, Appellant's nickname "Duke," and a phone number linked to Appellant. The records included photos posted on the date of the drug transaction showing Appellant and uniquely shaped, multi-colored pills matching those purchased during the controlled buy. Law enforcement photographs of the purchased pills were introduced and appeared identical to the pills shown on the Snapchat account. We hold both the court and the jury could reasonably and reliably conclude the photographs, which depicted both Appellant himself and what appeared to be identical, highly unique pills he sold to the CI, were what they were purported to be. *See Green*, 427 S.C. at 233, 830 S.E.2d at 715-716 (noting several facts linked messages to the defendant and ruling that "[t]aken together, th[o]se circumstances serve[d] as sufficient authentication to meet the low bar Rule 901(b)(4), SCRE, sets"); *id.* (holding the court was "persuaded the [fraud] risk [surrounding social media] is one Rule 901, SCRE, contemplates and can contain. Lawyers can always argue case-specific facts bearing on this risk and attempt to convince the jury the writing is not genuine"). Additionally, the State argued pretrial that the Snapchat photos were properly authenticated via the certificate of authenticity provided by Snapchat pursuant to Rule 902, SCRE. In addition to the authentication pursuant to Rule 901, we find the photographs were properly authenticated as an "acknowledged document" under Rule 902. Accordingly, we affirm as to this issue. *See* Rule 220(c), SCACR ("The appellate court may affirm any ruling . . . upon any ground[ ] appearing in the Record on Appeal.").

3.      Appellant argues the trial court erred in refusing to suppress the deceased CI's live-feed video recording made inside Appellant's home in violation of Article 1, Section 10's prohibition against unreasonable invasions of privacy. We find this issue unpreserved for appellate review. Following the pretrial ruling on the matter, defense counsel clarified he was only arguing a "live feed wire" with an officer "watching on the other end" could not be used on a CI who entered a residence, and the State explained it was not seeking to admit any evidence from the "live feed" device. The State indicated the live feed device was malfunctioning at the time of the transaction; therefore, the State only sought to introduce video evidence from the non-live stream device. Based upon our review of the record, oral argument, and in light of defense counsel's clarification at trial, any issue with the recording admitted into evidence was not preserved for appellate review since the recording played at trial did not come from the "live feed" device. *See State v. Bryant*, 372 S.C. 305, 315-316, 642 S.E.2d 582, 588 (2007) (explaining an issue

conceded at trial cannot be asserted later on appeal); *State v. Patterson*, 324 S.C. 5, 19, 482 S.E.2d 760, 767 (1997) (instructing an appellant "is limited to the grounds raised at trial").

4.     Appellant argues the trial court erred by failing to grant a new trial or an evidentiary hearing, when defense counsel produced affidavits at a post-trial hearing indicating two jurors intentionally concealed information during voir dire. We disagree.

Our state and federal constitutions guarantee a party the right to an impartial jury, and "*voir dire* can be an essential means of protecting this right." *Warger v. Shauers*, 574 U.S. 40, 50 (2014); U.S. Const. amends. VI, XIV; S.C. Const. art. I, § 14. If a party challenges a juror for cause, the trial court must examine the juror to determine if the juror "is sensible of any bias or prejudice" about the case. S.C. Code Ann. § 14-7-1020 (2017). In analyzing a claim of juror bias, our appellate courts have recently abandoned the distinction between intentional versus unintentional concealment. The proper inquiry is now as follows, "Where a party claims a juror has withheld material information in response to a *voir dire* question, the trial court must determine, preferably after a hearing, whether the juror's withholding suggests bias. This will typically turn on the nature of the information withheld, rather than the nature of the juror's state of mind in not disclosing it." *State v. Rowell*, 444 S.C. 109, 115, 906 S.E.2d 554, 557 (2024). Further, evaluating the merits of a juror misconduct claim is a fact-intensive inquiry, which is most appropriately conducted after a hearing. *See State v. Sparkman*, 358 S.C. 491, 496, 596 S.E.2d 375, 377 (2004) ("Whether a juror's failure to respond [during voir dire] is intentional is a fact intensive determination that must be made on a case-by-case basis."); *McCoy v. State*, 401 S.C. 363, 371, 737 S.E.2d 623, 628 (2013) ("[E]valuating the merits of a juror misconduct claim is a fact-intensive inquiry, which is most appropriately conducted after a hearing").

We hold the trial court did not abuse its discretion in denying Appellant's request for a new trial based on juror concealment. Following the motion, the court properly ordered a hearing to evaluate the juror misconduct claims. At the hearing, the reliability and credibility of the affidavits were called into question. The State warned the circuit court of the dangers of overturning convictions based solely on after-produced affidavits from a convicted defendant's group of friends. Further, Appellant had ample opportunity to notify counsel and the court of potential juror biases, and both jurors in question were seated without challenge from either party. Accordingly, we hold the court properly denied Appellant's request for a new trial based on juror concealment during voir dire. *See State v. Tucker*, 423 S.C. 403,

414, 815 S.E.2d 467, 472–73 (Ct. App. 2018) (finding that "[l]eaving credibility determinations in jury misconduct claims to trial judges means respecting their decision that they have enough evidence to weigh it at all, whether the witness' testimony is spoken or written[,]" thus holding that although live testimony may aid credibility assessments, judges can still effectively assess credibility from affidavits by evaluating both content and manner of communication).

Based on the foregoing, Appellant's conviction and sentence are

**AFFIRMED.**

**WILLIAMS, C.J., and THOMAS and CURTIS, JJ., concur.**