### 1411

Betty Broach BOCHETTE, Respondent v. Julius BOCHETTE, Appellant.
(386 S. E. (2d) 475)

Court of Appeals

*Cheryl Turner Hopkins,* Florence, *for appellant.*

*Kenneth E. Merriman,* Florence, *for respondent.*

Heard Oct. 11, 1989.

Decided Nov. 6, 1989.

GOOLSBY, Judge:

The family court determined a common-law marriage existed between Betty Broach Bochette and Julius Bochette and undertook to divide the marital property. It also found Mr. Bochette in contempt of its order requiring him to pay Mrs. Bochette "until further [o]rder of the [c]ourt" $100 a week from the $200 weekly profits of the store operated by the parties and ordered him jailed for six months unless he paid Mrs. Bochette $3,500 in arrearages. Mr. Bochette appeals. We affirm.

## I.

We find no error in the family court's finding that the Bochettes entered into a common-law marriage following Mr. Bochette's divorce from Georgia Bochette in 1977.

All the evidence pertaining to the issue of whether the parties entered into a common-law marriage comes from Mrs. Bochette and her witnesses, since Mr. Bochette never appeared for any scheduled deposition or hearing.

Although there is evidence, unnecessary to recount here, sufficient to support a finding that a common-law marriage did not take place, there is also evidence to support the family court's finding that it did. While this court in equity matters has jurisdiction to find facts based on its own view of the preponderance of the evidence, we are not required to disregard the findings of the trial judge who saw and heard the witnesses and who is in a better position to evaluate the testimony. *Hartley v. Hartley*, 292 S. C. 245, 355 S. E. (2d) 869 (Ct. App. 1987). In this instance, we agree with the trial judge.

As the record reflects, the parties began living together in 1970 before Mr. Bochette divorced Georgia Bochette in 1977. The day after Mr. Bochette obtained his divorce from Georgia Bochette, however, Mrs. Bochette, aware of the divorce, asked him when they would be married. Mr. Bochette answered, "[W]e [a]re already married, . . . we [a]re already man and wife and . . . we w[ill] get the paper later."

The Bochettes continued to live together until they separated on March 7, 1987. Between 1977 and 1987, Mr. Bochette introduced Mrs. Bochette to others as his wife and she introduced him to others as her husband. Indeed, people in the community referred to her as "Betty Bochette."

State tax returns filed by the parties in 1983, 1984, and 1985, indicated they were married persons filing jointly as did several of their federal tax returns. Also, an automobile insurance policy purchased by Mr. Bochette listed Mrs. Bochette as his wife.

As the foregoing demonstrates, the relationship between Mr. Bochette and Mrs. Bochette began illicitly; however, it lost its illicit nature when Mr. Bochette, after he divorced Georgia Bochette, answered the way he did Mrs. Bochette's

question about when they would marry and the parties for a ten-year period engaged in conduct manifesting to the world they were husband and wife. *See Prevatte v. Prevatte,* 297 S. C. 345, 377 S. E. (2d) 114 (Ct. App. 1989) (an illicit relationship can ripen into a common-law marriage after the impediment of a prior marriage is removed if the parties agree to enter into a common-law marriage and the agreement may be shown by conduct of the parties).

## II.

We find no merit to Mr. Bochette's argument that his separate property was not transmuted into marital property, based as it is entirely on his contention, as reflected in the appellant's brief, that there was no marriage. We have upheld the family court's finding that a common-law marriage existed between Mr. Bochette and Mrs. Bochette.

Mr. Bochette attempted to advance in oral argument before this court and in his reply brief other contentions concerning transmutation not argued in his appellant's brief; however, we need not consider these contentions, even though they were embraced by an exception. An appellant may not use either oral argument or the reply brief as a vehicle to argue issues not argued in the appellant's brief. *See Animal Protection Society of Durham, Inc. v. State of North Carolina,* 95 N. C. App. 258, 382 S. E. (2d) 801 (1989) (a reply brief cannot be used to raise new matters); 5 C. J. S. *Appeal & Error* Sec. 1324(1) at 329 (1958) ("A matter raised for the first time in oral argument or in the reply brief will not be considered by the appellate court."); *cf. Gold Kist, Inc. v. Citizens and Southern National Bank of South Carolina,* 286 S. C. 272, 333 S. E. (2d) 67 (Ct. App. 1985) (exceptions not argued by the appellant in its brief are deemed abandoned on appeal).

## III.

By Exception No. IV, Mr. Bochette contests the family court's order finding him in contempt for failing to pay Mrs. Bochette, in accordance with its temporary order dated March 25, 1987, $100 a week from the $200 weekly profits of the store operated by the parties. Mr. Bochette maintains the weekly payments, which he did not make and which, as

we noted above, were to continue "until further [o]rder of the [c]ourt," represented a division of marital property and not alimony and, as such, the payments were stayed by this appeal. *See* S. C. SUP. CT. R. 41 (subject to certain exceptions, an appeal taken to the Supreme Court operates as a supersedeas and as a stay of further proceedings).

Aside from the fact that Mr. Bochette had not taken an appeal at the time the family court issued its order finding him in contempt and ordering him jailed for six months unless he paid the arrearages, we view the weekly payments the family court directed him to make as temporary alimony and not as a distribution of marital assets since the payments were to be made for an indefinite, though temporary, period of time and for an indefinite total sum. *See Kohler v. Kohler*, 31 Ill. App. (2d) 151, 175 N. E. (2d) 603 (1961) (noting "alimony" is for an indefinite period of time and usually for an indefinite total sum). Because the weekly payments represented alimony, an appeal would not automatically stay their payment. *See* S. C. CODE ANN. Sec. 20-7-2220 (1976) ("The pendency of an appeal . . . shall not suspend . . . payments for support and maintenance of the wife. . . ."); *Kirsch v. Kirsch*, 299 S. C. 201, 383 S. E. (2d) 254 (Ct. App. 1989) (an appeal from an order of divorce did not automatically stay provision requiring payment of college expenses).

Affirmed.

GARDNER, J., and LITTLEJOHN, Acting Judge, concur.