THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 Harry Z. Pappas, a/k/a Zachary H. Pappas, and The Judges Chambers Bar & Grille, L.L.C., Appellants,
 v.
 Ollie’s Seafood Grille & Bar, L.L.C., Christine B. Goodman, and D.Martin Goodman, Respondents.
 Harry Z. Pappas, a/k/a Zachary H. Pappas, and The Judges Chambers Bar & Grille, L.L.C., Appellants,

 
 

v.

 
 
 
 Ollie’s Seafood Grille & Bar, L.L.C., Christine Goodman, and D.Martin Goodman, Respondents.
 
 
 

Appeal From Colleton County
 Jackson V. Gregory, Circuit Court Judge

Unpublished Opinion No. 2007-UP-090
Heard February 7, 2007  Filed February 23, 2007

AFFIRMED

 
 
 
 Bert Glenn Utsey, III, of Walterboro; for Appellants.
 John E. North, Jr., of Beaufort; for Respondents.
 
 
 

PER CURIAM:  These appeals arise from a lawsuit filed by Harry Z. Pappas and The Judges Chambers Bar & Grille (collectively Plaintiffs) against Ollies Seafood Grille & Bar, Christine Goodman, and Martin Goodman (collectively Defendants) for breach of contract, unfair trade practices, and defamation allegedly resulting from an attempted purchase and sale of certain restaurant furniture and equipment.  In their responsive pleadings, Defendants denied Plaintiffs allegations, asserted various affirmative defenses, and counterclaimed for breach of contract and interpleader.  Following a hearing on cross summary judgment motions and Plaintiffs motion to compel, the trial judge issued an order (1) denying Plaintiffs summary judgment motion in its entirety; (2) granting summary judgment to Defendants; (3) awarding Defendants damages, including attorney fees and costs to be determined at a subsequent hearing;  and (4) denying Plaintiffs motion to compel.  After the hearing on Defendants request for attorney fees and costs, the trial judge awarded Defendants the full amount of their claimed attorney fees and costs.  Plaintiffs filed three notices of appeal from the trial judges orders.[1]  We affirm.
FACTS AND PROCEDURAL HISTORY
On March 21, 2000, Pappass son, Harry L. Pappas (Hank) and Victor Kreeger formed a limited liability company named Judges Chambers Fine Food & Spirits (Food & Spirits).  Soon after its formation, Food & Spirits began operating a restaurant. 
On July 19, 2000, Pappas loaned $38,714.00 to Food & Spirits.  The loan was collateralized by a security interest in, among other things, [a]ll furniture, fixtures and equipment of Food & Spirits as set forth in an inventory dated July 18, 2000.  Pappas filed a UCC-1 financing statement for the loan on July 21, 2000, and thereafter loaned additional amounts to Food & Spirits. 
On August 31, 2000, Antonio Cerezo was admitted as a voting member of Food & Spirits.  In addition to receiving voting rights, Cerezo became entitled to twenty-five per cent of any distributions as well as a minimum of $50,000.00 in the event of the sale of liquidation or the entire LLC. 
Because of financial difficulties, Food & Spirits closed its restaurant on June 1, 2002.  On June 7, 2002, Cerezo obtained an attachment order from the Colleton County Court of Common Pleas on the assets of Food & Spirits.  There appears to be no dispute that both Hank and Food & Spirits were served with the attachment.  Nevertheless, on June 10, 2002, the assets of Food & Spirits, allegedly with Cerezos knowledge, were surrendered to Pappas to satisfy his security interest.  Pappas admitted he never initiated a formal foreclosure of his lien on the assets of Food & Spirits.
On June 21, 2002, Pappas formed a new company separate from Food & Spirits and named it The Judges Chambers Bar & Grille (Chambers).  Pappas also obtained a lease in his own name on the restaurant property.  Chambers then re-opened the restaurant using the furniture, fixtures, and equipment that had earlier served as collateral for Pappass loan to Foods & Spirits, as well as other assets and licenses that Pappas himself acquired.  Pappas further maintained he voluntarily paid all creditors who asserted a legitimate claim against Foods & Spirits.
During the summer of 2002, Pappas, on behalf of Chambers, accepted an offer from Defendants to buy all assets, tangible and intangible; excluding inventory of The Judges Chamber[s] Restaurant for $75,000.00, including a tender of $2,000.00 in earnest money.  On September 4, 2002, Defendants Martin and Christine Goodman took out a mortgage on their home and allocated $73,000.00 of the loan proceeds for Payoff to The Judges Chambers Restaurant, LLC.  A check for the same amount was issued from the escrow account of their closing attorney payable to The Judges Chambers Restaurant. 
On the day of the loan closing, Chambers and Ollies Seafood Grille & Bar (Ollies) executed a blanket conveyance, bill of sale, assignment, and agreement for the sale of the tangible and intangible assets of the business known as The Judges Chambers Bar & Grill, a document drafted by Defendants attorney.  The agreement contained express warranties of both title and freedom from encumbrances.  It also provided that, in the event of a breach, the non-breaching parties would be entitled to recover their attorney fees and expenses incurred in connection with enforcing the terms hereof.  Defendants, after tendering to Plaintiffs the balance of the sales proceeds, immediately took possession of the restaurant and changed the locks. 
On September 5, 2002, the day after the closing, the Sheriff of Colleton County served Ollies with the attachment order that Cerezo had obtained earlier.  Defendants then authorized a stop payment on the check given for the remainder of the purchase price.  Ollies immediately advised Pappas he would be paid as soon as the attachment was released.  Thereafter, however, the Goodmans discovered the property at issue was subject to numerous other encumbrances.
On September 13, 2002, Defendants attorney faxed a letter to Plaintiffs attorney, advising (1) the attachment on the assets conveyed by Chambers to Ollies constituted a breach of the agreement; (2) the dispute between Chambers and Cerezo needed to be immediately resolved; and (3) a federal and/or state tax lien may have also attached to the assets.  Defendants attorney further requested all pertinent information concerning any tax lien as well as a status report on the dispute between Chambers and Cerezo.  If the dispute between Chambers and Cerezo could not be settled, counsel suggested depositing a portion of the purchase price with the court pending resolution, leaving only the issue of a potential tax lien.  Finally, Defendants attorney advised that, if the matter could not be resolved in its entirety by the following Monday, his clients would most likely elect to rescind the transaction. 
On September 23, 2002, Plaintiffs and Cerezo reached an agreement under which Cerezo agreed to dissolve his attachment and relinquish his claim to $35,000.00 of the sales proceeds.  On October 1, 2002, Plaintiffs attorney e-mailed Defendants attorney, apparently advising of the agreement.[2]  Within the hour, Defendants attorney responded, stating his position that all of the proceeds of the sale must be placed in escrow until the claims of all lien holders are resolved.  Counsel further advised that, unless all the proceeds would be escrowed until clear title was obtained, he would recommend rescission of the sale to his clients.
As best we can tell from the record, there were no further attempts to resolve the matter without litigation.  On October 4, 2002, Plaintiffs filed this action.  Among other things, Plaintiffs contended Ollies and the Goodmans, acting individually and as authorized agents for Ollies, breached the contract, committed unfair trade practices, and made defamatory statements.  
On October 31, 2002, Circuit Court Judge Cordell Maddox entered an order granting a temporary injunction purporting to require Defendants either (1) to pay $73,000.00 to Plaintiffs within ten days, or (2) to re-tender to Plaintiffs all assets conveyed under the sales agreement and to return Plaintiffs to the status quo ante. 
On November 2, 2002, Defendants filed an answer generally denying the allegations of the complaint and alleging Plaintiffs did not have good title to the assets for which they were seeking payment in that the assets were subject to a judicial attachment and numerous liens.  Defendants also counterclaimed for damages for breach of the sales agreement. 
On the same day, Defendants filed a third-party complaint against Cerezo, Food & Spirits, the United States Internal Revenue Service, and the South Carolina Department of Revenue.  In their third-party complaint, Defendants sought to pay the disputed funds to the clerk of court and to have all claimantsincluding Cerezo, the Internal Revenue Service, and the Department of Revenueresolve those claims.  The third-party complaint, however, was never served on the Internal Revenue Service or the Department of Revenue.  The record is silent as to whether Food & Spirits was served.
On June 3, 2003, after numerous proceedings concerning the temporary injunction, Judge Maddox entered an order finding the injunction had been granted without proper notice and ordered Defendants to deposit $73,000.00, with interest, with the Colleton County Clerk of Court to be held pending further court order.  On August 29, 2003, after taking Pappass deposition, Defendants attorney wrote to Plaintiffs attorney, stating in pertinent part:

Despite your ongoing assurances to me and to the Court that the Pappas were working with the various claimants, nothing has ever been done to resolve either the federal and state tax liens.  In addition, the Cerezo attachment remains in place.
[Pappas] and Judges Chambers have had more than adequate time to get the title problems resolved and to obtain releases of the liens and encumbrances.  By their failure to do so, [Pappas] and Judges Chambers have repudiated the sale contract.
As a result thereof, Ollies considers the contract a nullity and hereby demands the return of the $2,000 consideration it paid.  Ollies does not waive its right to pursue Judges Chambers and [Pappas] for attorney fees, costs, and expenses it incurred as a result of their breach.

Defendants moved for summary judgment on September 3, 2003.  Shortly thereafter, on September 22, 2003, Plaintiffs moved for summary judgment.
Plaintiffs were eventually successful in obtaining written discharges from the Internal Revenue Service and the South Carolina Department of Revenue of their respective claims on the assets.  The Internal Revenue Service discharged its lien on October 2, 2003, and the Department of Revenue executed a partial release of its tax lien on May 28, 2004.  In addition, Plaintiffs sought and obtained an amended agreement from Cerezo regarding his claim as well as a consent order on May 25, 2004, dissolving Cerezos attachment. 
On November 3, 2003, after two orders of contempt had been issued against them, Defendants deposited $73,000.00 into the court.  On January 28, 2004, the Goodmans, pursuant to court order, deposited the interest that had accrued on the $73,000.00.
On April 27, 2004, Plaintiffs filed a motion to compel after Defendants objected to various interrogatories and requests for production.  It appears from the record that, although a hearing had been set on this motion, Plaintiffs attorney agreed to a request from opposing counsel to continue the matter and have it heard with the cross summary judgment motions.
The summary judgment motions and Plaintiffs motion to compel came before Circuit Court Judge Jackson V. Gregory on June 22, 2004.  By order dated July 7, 2004, the trial judge granted summary judgment to Defendants, denied Plaintiffs motion for summary judgment in its entirety, and denied Plaintiffs motion to compel.  The order further granted Defendants judgment against Plaintiffs for $2,000.00, the amount of the earnest money payment, as well as such other damages as shall hereafter be found resulting from [Plaintiffs] breach of contract, . . . costs herein expended, and [Defendants] attorney fees expended as a result of . . . Plaintiffs breach of contract as provided in the contract, as determined by the Court upon subsequent hearing. 
On July 9, 2004, Plaintiffs moved to alter or amend the trial judges order.  On July 14, 2004, Defendants attorney requested in an e-mail that the motion be decided without oral argument pursuant to Rule 59(f) of the South Carolina Rules of Civil Procedure.  Plaintiffs attorney responded by e-mail that he objected to proceeding without oral argument and alternatively requested a schedule for filing briefs.  On July 16, 2004, the trial judge notified both attorneys by e-mail that he had been holding court in another circuit and had not received either the motion to alter or amend or the e-mails concerning whether a hearing or additional briefing was warranted.  He further advised counsel that, upon receipt of Plaintiffs motion, he would decide what to do regarding the matter.  By order dated July 27, 2004, apparently without further communication to either side, the trial judge issued an order denying the motion and stating the denial was without a hearing.  In the order, he noted that [t]he issues have previously been briefed and argued by counsel[;] therefore[,] another hearing or further briefs would serve no purpose.  Plaintiffs filed their first notice of appeal on August 6, 2004.
On September 7, 2004, Defendants made a motion for clarification of the July 7, 2004 order, in which the trial judge granted them summary judgment.  In the motion, Defendants alleged the Colleton County Clerk of Court erroneously removed the case from the jury roster following the notice of appeal, but maintained the trial court had continuing jurisdiction to determine their damages.  They further requested an order directing the Colleton County Clerk of Court to release the funds deposited with the court on the ground that they were awarded the funds as a money judgment that was not subject to the automatic stay resulting from Plaintiffs appeal.  In the alternative, Defendants requested the trial court to lift the automatic stay so they could receive the funds.
Plaintiffs initial brief in the above-referenced appeal was filed in this court on February 25, 2005.  In this brief, Plaintiffs did not challenge either the trial judges determination that Defendants were entitled to recover their attorney fees expended as a result of the Plaintiffs breach of contract as provided in the contract or his instruction that the amount to be recovered would be determined by the Court upon subsequent hearing.   
On May 6, 2005, the trial judge held a hearing on Defendants motion for clarification.  On May 19, 2005, the trial judge issued an order finding his earlier order did not need clarification and declined to lift the stay; however, he also scheduled a hearing for August 12, 2005, on Defendants claim for attorney fees and costs.  In preparation for this hearing, he directed Defendants to provide Plaintiffs with evidence supporting their claims and Plaintiffs to serve rebuttal evidence within twenty days thereafter.  Plaintiffs served no rebuttal evidence and made no response to the evidence Defendants submitted.
On July 7, 2005, Plaintiffs petitioned this court to review the order dated May 19, 2005, and to reinstate the appellate stay as to further proceedings in the lower court during the pendency of the appeal.  Defendants filed both a return to the petition and their own petition for review of the same order.  In Defendants petition, they requested this court to enter an order lifting any stay of the provision in the summary judgment order concerning release of the funds on deposit with the Colleton County Clerk of Court and denying the relief requested in Plaintiffs petition.[3]  
At the hearing on August 12, 2005, Plaintiffs asserted the trial court lacked jurisdiction to adjudicate the matter before it and reiterated their demand for a jury trial.  When the trial judge[4] refused to submit the claim to a jury, Plaintiffs immediately hand-served a notice of appeal of this oral ruling during the hearing and declined to participate further.  The trial judge proceeded with the hearing, apparently with only Defendants present, and, by order dated September 12, 2005, awarded Defendants $77,437.50 as attorney fees and costs.  In response to this order, Plaintiffs filed a notice of appeal, their third such notice in this lawsuit, on September 20, 2005. 
DISCUSSION
1.  Plaintiffs first contend that, because the sales agreement did not incorporate the provisions of South Carolina Code section 36-2-609[5] as a remedy for an alleged breach of warranty, Defendants could not claim repudiation under this section.  In conjunction with this argument, Plaintiffs contend Defendants only remedy under the agreement for a breach of warranty of title was indemnification.  We disagree.  
Under South Carolina Code section 36-2-719(1), although a sales contract may provide for remedies in addition to or in substitution for those provided in this chapter, the party seeking redress is not limited to such remedies unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.[6]  Although, as Plaintiffs note, the contract included a provision that the agreement contains the entire agreement and understanding of the parties, it does not expressly limit the remedies available to an aggrieved party.[7]  
2.  We decline to address Plaintiffs argument that Defendants waived their right to rely on the remedial provisions in section 36-2-609 by (1) failing to allege repudiation as either a defense in their answer or a cause of action in their counterclaim, and (2) representing that they would make payment as required by the sales agreement if Plaintiffs resolved the alleged claims by Cerezo and the federal and state tax liens.  The summary judgment order did not address either of these arguments, and Plaintiffs did not raise either issue in their motion to alter or amend.[8]  
3.  Plaintiffs next argue that the trial judge erred in concluding Defendants were entitled to cancellation or rescission of the contract.  In support of this argument, Plaintiffs assert (1) they immediately and systematically began addressing the adverse claims and ultimately resolved those claims; therefore,  . . . there was never a reasonable ground for Defendants to be insecure about Plaintiffs performance under the Sales Agreement; and (2) there was an issue of material of fact concerning whether Plaintiffs, in undertaking to resolve the liens and to hold Defendants harmless, provided adequate assurance that they would perform as required by the agreement.  Plaintiffs further correctly point out the South Carolina Reporters Comments to section 36-2-609 explicitly state [t]he reasonableness of the grounds for insecurity (and thus the justification for the demanding assurance of performance) and the adequacy of any assurance offered are questions of fact.  
Notwithstanding this comment, we uphold the trial judges determination that Plaintiffs failed to submit evidence presenting genuine issues of material fact concerning whether Defendants had a reasonable ground for insecurity and whether Plaintiffs provided adequate assurances.[9]
As to Defendants grounds for insecurity, the trial judge stated in the appealed order:  It goes without saying, when the Attachment was levied by the Sheriff upon the Assets, Ollies had reasonable grounds for insecurity.  On appeal, Plaintiffs have neither offered any legal authority to challenge this conclusion nor directed our attention to any evidence in the record indicating why Defendants, upon discovering the various liens and encumbrances on the restaurant assets, should not have been concerned that they would not receive good title to the property as called for by the contract.[10]
Similarly, although the Reporters Comments state the adequacy of assurances is a fact question, we have found no evidence in the record before us presenting a genuine issue of material fact concerning whether Plaintiffs actions in response to Defendants concerns about the numerous liens on the assets constituted adequate assurances that they would perform as required by the agreement.  
In his letter of September 13, 2002, counsel for Ollies advised Plaintiffs of his concern about not only the Cerezo attachment but the federal and state tax liens as well.  Although Plaintiffs made some attempt to resolve the Cerezo attachment, we have found nothing in the record indicating a prompt attempt by Plaintiffs to address the tax liens.  Significantly, although Defendants attorney advised on October 1, 2002, that he would not consent to releasing the sales proceeds until all liens on the assets were resolved, there is no evidence that Plaintiffs attempted to provide any assurances at all within thirty days after this communication.  Instead, Plaintiffs apparently chose to respond to this communication by filing this litigation just a few days later.  The resolution of a number of the liens shortly before the summary judgment motions were heard does not create an issue of fact as to whether Defendants had reasonable grounds for insecurity at the time they became aware the assets were subject to encumbrances or whether Plaintiffs provided timely and adequate assurances when called to do so.[11]  
4.  In conjunction with the above argument, Plaintiffs assert that, even if they were properly deemed to have repudiated the sales agreement, the trial court should have awarded Defendants damages according South Carolina Code section 36-2-713 instead of allowing Defendants to retain possession of the purchase price.[12]  Because, however, the summary judgment order did not address the applicability of section 36-2-713 and Plaintiffs failed to raise this issue in their motion to alter or amend, we decline to address this argument.[13]
5.  Plaintiffs further argue summary judgment was premature in view of the fact that they had not completed discovery and had a pending motion to compel.  We disagree.  
Plaintiffs contend that the trial judge mistakenly believed they waived their right to be heard on their motion to compel because, as a matter of courtesy, their attorney agreed that Defendants attorney could argue his summary judgment motion first because it was filed earlier.  From the transcript of the proceedings, however, it is evident the trial judge was referring to Plaintiffs waiver of their request to amend their complaint and concluded that, because the discovery at issue would have been probative only on the causes of action that Plaintiffs sought to add in an amended pleading, a motion to compel was not warranted.[14] 
As to the motion itself, we find no reason to reverse the trial judges decision to deny it.  The discovery sought included lists of revenues and expenses of the restaurant, various financial statements concerning Defendants current net worth, and profit and loss statements and similar documents.  Although this information was arguably probative on the issue of whether Defendants were able to operate the restaurant and receive income from the business, it is irrelevant to whether Defendants had due cause for concern because of the numerous encumbrances on the restaurant assets or whether Plaintiffs acted reasonably in assuaging this concern.[15]
6.  We reject Plaintiffs contention that the trial judge erred in denying their motion to alter or amend without first holding oral argument or requesting and receiving a brief from them.   Under Rule 59(f) of the South Carolina Rules of Civil Procedure, a motion to alter or amend may in the discretion of the court be determined on briefs filed by the parties without oral argument.[16]
In Pollard v. County of Florence, this court held the trial court did not err in declining to entertain oral argument on a motion to alter or amend.  Noting the appellant had submitted a seven-page motion setting forth arguments on all issues raised, we held the trial court committed no abuse of discretion in dispensing with oral argument.[17]   
Plaintiffs argue that Pollard supports the conclusion that a trial judge should not decide a motion under Rule 59(e) in the absence of both briefs and oral argument.  Applying this conclusion to the present case, they assert that, in contrast to the materials submitted by the appellant in Pollard, their own post-trial motion was succinct and could not be characterized as the functional equivalent of a brief.  Significantly, however, Plaintiffs stated in the motion that the grounds for their arguments are set forth in Plaintiffs memoranda formerly filed with the Court, the arguments made by Plaintiffs at the June 22, 2004 hearing, and the arguments to be asserted by Plaintiffs at the hearing on this motion.  We see no meaningful distinction between Plaintiffs incorporation by reference of their prior memoranda and oral arguments in the case and the detailed post-trial motion submitted in Pollard; both are the functional equivalents of a brief.
7.  Plaintiffs further appeal the dismissal of their claim for defamation.  We find no error.  
In this cause of action, Plaintiffs alleged Defendants published to members of the public the false statement that Defendants were unable to obtain a liquor license due to wrongful acts and/or omission of Plaintiffs.  The only alleged defamatory statement addressed in the appealed order was purportedly made by an unidentified girl at the bar that Plaintiffs had cheated or screwed Defendants in Defendants attempt to obtain a liquor license.  As noted by the trial judge, Plaintiffs argued that because the girl at the bar was purportedly an employee of Ollies, that that is circumstantial evidence to support the claim that the statement was also made by the Goodmans or that the statement should be attributed to Ollies.  
Among other reasons, the trial judge found Plaintiffs failed to present evidence that the alleged slander was either actionable per se or caused specific harm.[18]  On appeal, Plaintiffs do not challenge the finding that they made no showing concerning specific harm.  Regarding the finding that the statement at issue was not actionable per se, they assert only that the statements related to Plaintiffs fitness in business.  Without any elaboration or supporting legal authority for this assertion, we hold this argument is conclusory and decline to address it.[19]  Because, then, we see no reason to disturb the trial judges finding that the alleged slander was neither actionable per se or caused Plaintiffs specific harm, we affirm the grant of summary judgment to Defendants on this cause of action.[20]
8.  Plaintiffs take issue with the award of attorney fees and costs to Defendants, asserting the trial judge lacked jurisdiction to make such an award while their appeal in the case was pending.  We disagree.  Although, as Plaintiffs note, Rule 225(a) of the South Carolina Rules of Appellate Procedure states the service of a notice of appeal in a civil matter acts to automatically stay matters decided in the order on appeal,[21] this rule also grants the trial court continuing jurisdiction to hear matters not affected by the appeal.[22]  As the supreme court stated in Jackson v. Speed, so long as the basis for an award of attorney fees is not challenged on appeal, the determination of the amount of those fees is not affected by the appeal and the trial court has jurisdiction to proceed on this issue.[23]
9.  We further hold the trial judge did not lose the power to determine the amount of the fees to be awarded simply because the term of court ended before the hearing scheduled on this issue.  Despite the end of a court term, a circuit judge always has the power to adjudicate issues presented to him or her within that term.[24] 
10. Assuming without deciding that Plaintiffs timely appealed their right to have a jury decide the attorney fees award, we find no error in the trial judges decision that a jury trial was not warranted on this issue.  
In support of their argument, Plaintiffs cite Rule 38(a) of the South Carolina Rules of Civil Procedure, which provides in pertinent part that [i]ssues of fact in an action for the recovery of money only . . . must be tried by a jury, unless a jury trial be waived.[25]  With regard to the issue of attorney fees award in this particular case, however, the trial judge had already determined that Defendants could recover attorney fees and costs, the only question remaining being the amount to which they were entitled.  Such an amount is a matter of law.    As the supreme court noted in Enoree v. Yarborough, 

There may arise cases, of course, where the right to recover any fees at all may depend upon certain issues of fact which involve that right. In law cases such issues should be submitted to the jury; but in all cases, law and equity, in which there is no dispute as to the facts and the only issue is as to the reasonable amount of the fee, that becomes a question of law to be determined by the court, either with or without expert testimony and with or without the assistance of the jury as the court may desire.[26] 

We hold the trial judge acted within his discretion in dispensing with a jury trial on the issue of the amount of attorney fees and costs to be awarded to Defendants.  The only issue before the trial judge was the reasonable amount of fees and costs to which Defendants were entitled.  As this court has noted, the question of [w]hat constitutes a reasonable [attorney] fee is a matter for the court to determine as a matter [of] informed judicial discretion.[27]
11. Finally, Plaintiffs assert a number of reasons as to why the award of attorney fees and costs should not stand.  These reasons are as follows:  (1) the trial judge failed to discuss the required six factors to support its award, and Defendants failed to present evidence to a number of these factors; (2) Defendants made no effort to segregate the fees claimed between Ollies and the Goodmans, who were not parties to the contract; (3) the amounts claimed included attorney fees that were not incurred in conjunction with enforcing the contract; (4) the evidence submitted by Defendants related to issues necessitated by Defendants conduct in the litigation and upon which Plaintiffs prevailed; (5) Defendants attorney never provided evidence about the fees charged, the reasonableness or of the fees, or the time  spent on the activity; and (6) the costs awarded exceeded those permitted by law.  
We reject these arguments.      It is undisputed that, contrary to the trial judges instructions, Plaintiffs failed to respond to the evidence submitted by Defendants on the issue of attorney fees and costs or submit evidence of their own on this issue.  In addition, Plaintiffs declined to participate in the hearing and made no post-trial motion to have the trial judge review their assertions of error.  We agree with Defendants statement that [Plaintiffs] cannot sit back, offer no evidence or argument, refuse to participate in the attorney fee hearing, make no post hearing motion to bring alleged error to the attention of the Circuit Court, and then raise on appeal issues never presented below.[28]  Under these circumstances, we hold Plaintiffs have not presented any meritorious grounds on which this court should set aside the award of attorney fees and costs.
 AFFIRMED.
HEARN, C.J., and GOOLSBY and STILWELL, JJ., concur.

[1]  Case number 14771 corresponds to Plaintiffs first notice of appeal and concerns Plaintiffs appeal of the denial of their motion to compel and the grant of summary judgment to Defendants.  Case number 14745 corresponds to Plaintiffs second and third notices of appeal and concerns the award of attorney fees and costs.
[2]  The text of the message sent by Plaintiffs attorney suggests the agreement was in an e-mail attachment; however, the attachment itself was not in the record.
[3]  This court denied both petitions on May 12, 2006.
[4]  Judge Gregory presided at the hearing on attorney fees and costs as well as the hearing on the cross summary judgment motions and Plaintiffs motion to compel.
[5]  This section, entitled Right to adequate assurance of performance, provides in pertinent part that [a]fter receipt of a justified demand failure to provide within a reasonable time not exceeding thirty days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.  S.C. Code Ann. § 36-2-609(4) (2003).
[6] Id. § 36-2-719(1)(a) and (b) (emphasis added); see also id. § 36-1-106(2) (Any right or obligation declared by [the Uniform Commercial Code] is enforceable by action unless the provision declaring it specifies a different and limited effect.).  
[7] See S.C. Code Ann. § 36-2-719 S.C. reporters cmts. (2003) ([R]esort could be had alternatively to other remedies provided in the Code unless the contract expressly provides that the limited or modified remedy is exclusive.); Myrtle Beach Pipeline Corp. v. Emerson Elec. Co., 843 F. Supp. 1027, 1041 (D.S.C. 1993) (The Uniform Commercial Code requires that the exclusivity of a limited remedy be made explicit, . . . and failure to do so will result in the limited remedys being construed as an optional additional remedy and will not preclude the availability of other remedies under the Code . . . .), affd, 46 F.3d 1125 (4th Cir. 1995).
[8] See Noisette v. Ismail, 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (holding that, when the trial court does not explicitly rule on an issue at trial and the appellant fails to move to alter or amend on that ground, the issue is not properly before appellate court and should not be addressed).
[9] See Humana Hosp.-Bayside v. Lightle, 305 S.C. 214, 217, 407 S.E.2d 637, 638 (1991) (rejecting the appellants sweeping legal assertion that summary judgment is always improper on certain issues and stating [t]hese issues are only proper to present to the jury when there is a genuine issue as to some material fact for the jury to consider).
[10] See S.C. Code Ann. § 36-2-312(1) (2003) (providing that, subject to certain conditions not applicable in the present case, a sales contract contains  a warranty by the seller that . . . the title conveyed shall be good . . . and  . . . the goods shall be delivered free from any . . . encumbrance of which the buyer at the time of contracting has no knowledge).  Moreover, the contract in this case contained express warranties of title and freedom from encumbrances.
[11] The trial judge acknowledged Plaintiffs could have retracted their repudiation, which arose by operation of section 36-2-609(4), at any time before Defendants notified them the repudiation was considered final, but further found no such retraction occurred during the ten months that Defendants were waiting the encumbrances to be resolved.  At oral argument, counsel for Plaintiffs contended Pappas, during his deposition, testified about numerous efforts he made to resolve the encumbrances; however, because these assertions did not appear in Plaintiffs brief on appeal, we do not consider them now.  See Bochette v. Bochette, 300 S.C. 109, 112, 386 S.E.2d 475, 477 (Ct. App. 1989) (An appellant may not use either oral argument or the reply brief as a vehicle to argue issues not argued in the appellant's brief.).
[12] This section, entitled Buyers damages for nondelivery or repudiation provides the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages . . . .  S.C. Code Ann. § 36-2-713 (2003).
[13] The trial court instead cited South Carolina Code section 36-2-711 in support of its determination that Ollies could recover the purchase price and attorney fees.
[14] The discovery at issue included financial records and information concerning the relationship between Ollies and the Goodmans.  Defendants objected to the requested discovery as overly broad, burdensome, and not likely to lead to admissible evidence.  Simultaneously with the motion, Plaintiffs moved to amend their complaint to assert additional causes of action, including an attempt to pierce the corporate veil.  Plaintiffs withdrew their motion for leave to amend when it appeared the motion would have delayed a trial on the merits.  The trial later fell through because the particular judge assigned to preside recused himself at the request of counsel for Defendants; however, Plaintiffs pursued only their motion to compel and never sought to reinstate their motion to amend their complaint. 
[15] See S.C. Code Ann. § 36-2-312 official cmt. 4 (2003) (stating that, under Article 2,  eviction is not a necessary condition to the buyers remedy [for infringements violating the warranty of title to the goods purchased] since the buyers remedy arises immediately upon receipt of notice of infringement; it is merely one way of establishing the fact of breach).
[16] Rule 59(f), SCRCP (emphasis added).
[17] Pollard v. County of Florence, 314 S.C. 397, 402, 444 S.E.2d 534, 536 (Ct. App. 1994).
[18] See Holtzscheiter v. Thomson Newspapers, 332 S.C. 502, 510, 506 S.E.2d 497, 511 (1998) (noting a plaintiff cannot recover for slander, as opposed to libel, without showing special damages unless the alleged defamatory comments fall within one of five specific types of acts or characteristics).
[19] See First Sav. Bank v. McLean, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (holding an issue will be deemed abandoned when the appellant fails to provide arguments or supporting authority).
[20] See Weeks v. McMillan, 291 S.C. 287, 292, 353 S.E.2d 289, 292 (Ct. App. 1987) (Where a decision is based on alternative grounds, either of which independent of the other is sufficient to support it, the decision will not be reversed even if one of the grounds is erroneous.).
[21] Rule 225(a), SCACR.
[22] Id.
[23] Jackson v. Speed, 326 S.C. 289, 311, 486 S.E.2d 750, 761 (1997).
[24] See Cox v. Fleetwood Homes of Ga., 334 S.C. 55, 58, 512 S.E.2d 498, 500 (1999) ([A] judge may issue an order regarding matters which were submitted to the judge while presiding in the circuit.).
[25] Rule 38(a), SCRCP.
[26] Enoree v. Yarborough, 120 S.C. 385, 398, 113 S.E. 313, 317 (1922) (emphasis added); see also Baron Data Sys. v. Loter, 297 S.C. 382, 384, 377 S.E.2d 296, 297 (1989) (Where there is a contract, the award of attorneys fees is left to the discretion of the trial judge and will not be disturbed unless an abuse of discretion is shown.).
[27] Prevatte v. Asbury Arms, 302 S.C. 413, 416, 396 S.E.2d 642, 644 (Ct. App. 1990) (emphasis added).
[28] See Seabrook Island Property Owners Assn v. Berger, 365 S.C. 234, 244, 616 S.E.2d 431, 437 (Ct. App. 2005) ([A] trial judge in the exercise of discretion in an award of attorneys fees under a contract between the parties is NOT required to take live testimony, provided the adverse party is allowed to present a full and complete presentation against the award of attorney's fees by affidavits.) (emphases in original); Honea v. Honea, 292 S.C. 456, 458, 357 S.E.2d 191, 192 (Ct. App. (1987) (We have stated before, and we reiterate here, that a party cannot sit back at trial without offering proof, then come to this Court complaining of the insufficiency of the evidence to support the [trial] courts findings.).   
On reply, Plaintiffs cite Rule 52(b) of the South Carolina Rules of Civil Procedure for the proposition that, in a non-jury proceeding, a party may challenge the sufficiency of the evidence to support the trial judges findings even absent an objection during trial to such findings, a motion to amend them, or a motion for judgment.  Rule 52b), SCRCP.  What Plaintiffs fail to disclose in their brief, however, is that Paragraph (b) of Rule 52 pertains to motions made not later than 10 days after receipt of written notice of entry of judgment for the trial court to amend its findings or make additional findings and . . . [to] amend the judgment accordingly . . . .  Plaintiffs made no such motion in this case; therefore, Rule 52(b) is not applicable here.